**Holmes Marcy DAVENPORT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45045.**

Court of Criminal Appeals of Texas.

June 14, 1972.

Rehearing Denied July 26, 1972.

Donald D. Koons, Dallas (on appeal only), for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the possession of heroin. The jury assessed the punishment at eight years.

The sufficiency of the evidence is challenged.

P. M. DeHoyas, at the time of the offense a detective in the narcotics section of the Dallas Police Department, testified that he secured a search warrant for 2136 Lovedale in Dallas on April 18, 1969. At about 2:15 p.m., he and other officers executed the warrant. He and Officer Ball went to the side door. Other officers went to the front door and announced that they were officers and had a search warrant.

Officer DeHoyas saw through the glass door a man with a gun in his belt (later identified as Johnny Ralph Dupree) running toward him. Officers DeHoyas and Ball entered the residence, disarmed, searched and handcuffed Dupree and placed him on the couch. The front door was then unlocked and the other officers entered. The appellant on a cot in the front room was "completely out on drugs." The officers "half way aroused him," inquired if he lived there and, "He said he and his old lady, I believe were the words, his exact words, lived there." They then searched the appellant, handcuffed him and placed him on the couch with Dupree. Officer DeHoyas further testified that the appellant had "numerous needle marks, old and new" on his arm.

Dorothy Manson was found at the kitchen table talking on the telephone. She, too, was searched, handcuffed and placed on the same couch with the two men.

Officers DeHoyas and Ball then searched the remainder of the house. In one of the dresser drawers in the bedroom the officers found a small brown prescription vial containing a thick, clear liquid. They found four disposable hypodermic syringes and needles in a suitcase. Officer DeHoyas further testified that he found a black suitcase that contained burglary tools in a closet.

While the officers were at the house, Fred Allen Marsh came to the front door, was admitted and searched. The search revealed a brown prescription vial containing several white tablets. Marsh was handcuffed and placed at the kitchen table.

When the front or living room was searched the officers found heroin inside a crumpled up cigarette package underneath the couch.

Officer Ball testified substantially to the same facts and circumstances as Officer DeHoyas.

Officer Wiley Flynn, a narcotics officer with the Department of Public Safety, testified that he had awakened the appellant and was of the opinion that appellant was under the influence of a drug. He remained in the living room watching the prisoners as the house was searched and was present when the heroin was found.

Lieutenant J. C. Day of the Dallas Police Department testified regarding his role in transporting the evidence to the criminal investigation laboratory. By consent of the State and appellant, oral stipulations were entered into before the jury that the evidence was received by a chemist at the criminal investigation laboratory from Lieutenant Day and another, not altered in any way, and was turned over to Dr. Morton F. Mason for analysis. Dr. Mason, director of the laboratory, testified that the substance in the crumpled cigarette package contained heroin and morphine. He further testified that one of the tablets found on Marsh was analyzed and found to contain methadone.

Peggy Pauline Smith, called by the appellant, testified that she rented the residence searched and had been taken to the beauty shop by Marsh on the day in question. She testified that appellant occasionally stayed at her apartment and slept on a rollaway bed in the living room. The night before the search she, Dorothy Manson, Marsh and appellant had been out drinking. The appellant was still asleep when she left for the beauty shop. Johnny Dupree, her former husband, had come in just before she left.

The appellant testified that he had no knowledge of the heroin except that Dorothy Manson had told him that Dupree had thrown it under the couch. He said he was never put on the couch and was in another part of the house when the heroin was found.

█ Complaint is made that the trial court erred in denying his motion for continuance upon learning that his subpoena for Dorothy Manson to appear as his witness was returned unexecuted. The record shows the subpoena to have been issued on September 3, 1970, to be served on Doro-

thy Manson at her place of employment. It was returned the same day noting that she was no longer employed at the designated place and her whereabouts were unknown. The trial court denied the motion "without prejudice to reurging." In his motion for a new trial the appellant did not reurge the motion for continuance and show what the testimony of the absent witness would have been which is a prerequisite to raising this as a ground of error on appeal. Baker v. State, Tex.Cr.App., 467 S.W.2d 428.

■ Appellant contends that error was committed when the court admitted the heroin into evidence. He now claims that it was obtained as the result of an illegal search warrant. Since the appellant did not object when the heroin was introduced and did not show that he had no opportunity to object at the time of introduction, the ground of error is not before this Court for review. See, e.g. Brown v. State, Tex.Cr.App., 460 S.W.2d 925; McLaughlin v. State, Tex.Cr.App., 426 S.W.2d 244; 5 Tex.Jur.2d, Section 39, page 61.

■ Next, the appellant contends that error was committed when the jury was made aware of extraneous offenses when Officer DeHoyas told of finding the burglary tools. An objection was sustained and the jury instructed to disregard the testimony. A motion for a mistrial was overruled. If there was any error in the testimony it was made harmless by the trial court's instruction to disregard. See generally 5 Tex.Jur.2d, Appeal and Error, Section 447, page 711. Appellant further complains of the admission of evidence that Marsh had methadone in his possession. The rule against admitting evidence of extraneous offenses generally refers to other offenses by the defendant and not by another. See generally 1 Branch's Ann.P. C.2d, Section 188, page 200. The same rationale of irrelevance to the crime for which the defendant is charged, however, would seem to apply where the extraneous offense is committed by another and somehow implies a "guilt by association." Where, however, as in the present case the other offense is part of the case on trial or blended or closely interwoven therewith, proof of all the facts is proper. Mayes v. State, Tex.Cr.App., 472 S.W.2d 528. The contentions concerning what was found during the search are overruled.

■ The appellant also contends that the oral stipulation showing a portion of the chain of custody of the heroin was insufficient because not reduced to writing. Article 1.15, Vernon's Ann.C.C.P., as applicable at the time of this trial [1] made oral stipulations insufficient to support a conviction "except upon the verdict of a jury." Hence, the statute had no application to a trial before a jury. Further, upon direct examination Officer DeHoyas testified without objection that he found some heroin in the living room portion of the residence inside a crumpled up cigarette package. This contention of error is overruled.

Complaint is made that the evidence is insufficient. He urges that since this is a circumstantial evidence case the proven circumstances must exclude every other reasonable hypothesis except that of guilt and that the proven circumstances in the present case do not exclude the reasonable hypothesis that another, and not the appellant, possessed the heroin and threw it under the couch. He relies upon Kinkle v. State, Tex.Cr.App., 474 S.W.2d 704; Martinez v. State, 170 Tex.Cr.R. 266, 340 S.W.2d 56; and Brock v. State, 162 Tex.Cr.R. 339, 285 S.W.2d 745.

■ The mere presence of the accused in the residence where the heroin was found does not of itself justify an inference of possession. See, e. g., Carr v. State, Tex.Cr.App., 480 S.W.2d 678 (1972); Shortnacy v. State, Tex.Cr.App., 474 S.W.2d 713. In the present case no heroin was found on appellant's person. Cf. Alaniz v. State, Tex.Cr.App., 458 S.W.2d 813.

1. The statute was amended in 1971 to allow oral stipulations in a trial before the court.

We must determine if the evidence links the appellant to the narcotics. Carr v. State, supra; Haynes v. State, Tex.Cr. App., 475 S.W.2d 739. There is some incriminating evidence of appellant's control of the residence from his statement that he and "his old lady" lived there. See Boyd v. State, 118 Tex.Cr.R. 532, 39 S.W.2d 55. He was under the influence of a drug, had recent needle marks on his arm and was present in the room where the heroin was found. Further, all others, i. e. Dupree and Dorothy Manson, were searched and handcuffed before being brought into this room and placed on the couch. No furtive gestures were made by any of these persons. For the above reasons we hold the circumstantial evidence sufficient for a jury to conclude that appellant knowingly possessed the heroin either alone or in conjunction with others and to exclude every other reasonable hypothesis except that of appellant's guilt.[2]

No reversible error is shown. The judgment is affirmed.

---

2. The trial court charged the jury on the law of principals, knowledge and circumstantial evidence.