**Woodie LOUDRES, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 63676.**

**Court of Criminal Appeals of Texas, En Banc.**

Sept. 10, 1980.

Rehearing Denied April 29, 1981.

Frank Coffey and Marvin D. Snodgrass, Fort Worth, for appellant.

Tim Curry, Dist. Atty., William Kane, Jack Strickland and Charles Roach, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

C. Chris Marshall, Asst. Dist. Atty., Fort Worth, for the State on rehearing only.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for capital murder. The punishment is death.

The appellant contends that certain prospective jurors were improperly excused. We agree: the rationale of the decisions of the Supreme Court in *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) and *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), requires the reversal of the judgment in this case.

In *Witherspoon v. Illinois,* supra, the United States Supreme Court stated:

"... we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction."

391 U.S. at 522, 88 S.Ct. at 1776. Accord, *Boulden v. Holman,* 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); *Maxwell v. Bishop,* 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Ocker v. State,* 477 S.W.2d 288 (Tex. Cr.App.1972); *Grider v. State,* 468 S.W.2d 393 (Tex.Cr.App.1971); *Ex parte Martin,* 479 S.W.2d 280 (Tex.Cr.App.1972).

The New Penal Code of 1974 provides a statutory scheme for imposition of the death penalty which includes the requirement that each juror take an oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact. V.T.C.A. Penal Code, Sec. 12.31(b). The jurors' answers to certain factual questions determine whether a defendant found guilty of capital murder will be sentenced to death or to imprisonment for life. Art. 37.071, V.A.C.C.P. This Court has repeatedly found the holding in *Witherspoon* remains alive and well in light of this procedure. *Hovila v. State*, 532 S.W.2d 293 (Tex.Cr.App.1975); *Livingston v. State*, 542 S.W.2d 655 (Tex.Cr.App.1976), cert. denied 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977); *Brock v. State*, 556 S.W.2d 309 (Tex.Cr.App.1977), cert. denied 434 U.S. 1002, 98 S.Ct. 647, 54 L.Ed.2d 498 (1977).

This Court, however in construing the statutory scheme enacted by the Texas Legislature, determined that a prospective juror might be disqualified from serving in a capital trial under Sec. 12.31(b) independent from any determination that his exclusion was consistent with *Witherspoon*. See, e. g., *Moore v. State*, 542 S.W.2d 664 (Tex.Cr. App.1976), cert. denied 431 U.S. 949, 98 S.Ct. 2666, 53 L.Ed.2d 266 (1977); *Boulware v. State*, 542 S.W.2d 677 (Tex.Cr.App.1976), cert. denied 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977); *Burns v. State*, 556 S.W.2d 270 (Tex.Cr.App.1977), cert. denied 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977); *Freeman v. State*, 556 S.W.2d 287 (Tex.Cr.App.1977), cert. denied 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794 (1978); *Hughes v. State*, 562 S.W.2d 857 (Tex.Cr. App.1978), cert. denied 439 U.S. 903, 99 S.Ct. 268, 58 L.Ed.2d 250 (1978); *Hughes v. State*, 563 S.W.2d 581 (Tex.Cr.App.1978), cert. denied 440 U.S. 950, 99 S.Ct. 1432, 59 L.Ed.2d 640 (1979); *Bodde v. State*, 568 S.W.2d 344 (Tex.Cr.App.1978), cert. denied 440 U.S. 968, 99 S.Ct. 1520, 59 L.Ed.2d 784 (1979); *Adams v. State*, 577 S.W.2d 717 (Tex.Cr.App.1979), rev'd 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).

However, in the recent case of *Adams v. Texas*, supra, the majority of the United States Supreme Court reversed *Adams v. State*, supra, and rejected the contention that Sec. 12.31(b), supra, provides a basis for excluding a prospective juror independent of *Witherspoon* considerations. The Court held that the United States Constitution does not permit the State to exclude a prospective juror under Sec. 12.31(b), supra, on grounds which exceed the limitations set out in *Witherspoon*:

> "The State could, consistently with *Witherspoon*, use Sec. 12.31(b) to exclude prospective jurors whose views on capital punishment are such as to make them unable to follow the law or obey their oaths. But the use of Sec. 12.31(b) to exclude jurors on broader grounds based on their opinions concerning the death penalty is impermissible."

448 U.S. 48–49, 100 S.Ct. 2528.

Although a majority of this Court might well agree that Mr. Justice Rehnquist, in his dissenting opinion, states the proper view that Texas should be permitted under the Constitution to require each juror to swear that he or she will answer the punishment questions in a capital case without regard to their cumulative consequences, we must adhere to and implement the majority opinion, which is now the law.

In the present case, the appellant argues that the trial court erred in requiring the appellant to confine his voir dire examination of certain prospective jurors, who were excused for cause, to questions relating only to Sec. 12.31(b), supra, and not to *Witherspoon*.

The State moved to exclude venirewoman Betty Workman under Sec. 12.31(b), supra, because she could not state that her deliberations would remain unaffected by the mandatory penalty of death or imprisonment for life. The defense counsel, in his examination, asked:

> "Q. ... Are you telling me that you would never, under any circumstances, take any affirmative action which would result in the imposition of the death penalty in any case, regardless of the facts?

"MR. STRICKLAND [PROSECUTOR]: Your Honor, we would have to object to that question, of course, because it is outside the scope of this limited voir dire. Our inquiry should be limited to 12.31.

"THE COURT: I'll sustain the objection."

The defense counsel was not permitted to elicit an answer to this question from venirewoman Workman in order to perfect his bill of exceptions. Venirewoman Workman was excused for cause under Sec. 12.31(b), supra.

Similarly, the State moved to exclude venirewoman Beatrice Grant on Sec. 12.31(b), supra, grounds because of her inability to follow the required oath. The defense attorney objected that her exclusion was not required under *Witherspoon*. The defense attorney asked venirewoman Grant:

"Q. ... would you automatically answer the special issues ... posed to you by the Court's instructions in the negative in any case regardless of the facts?

"MR. STRICKLAND [PROSECUTOR]: Your Honor, we have to object.

"Once again Mr. Snodgrass [Defense counsel] is confusing *Witherspoon* with 12.31. That's a *Witherspoon* question, and the voir dire, as I understand it, is limited to 12.31 based upon the State's challenge on that basis.

"THE COURT: Mr. Strickland, the Court is limiting the interrogation to 12.31; however, that particular question ... could be considered to be encompassed by 12.31, so I'll overrule the objection."

▮ The trial judge, in subsequently excusing venirewoman Grant for cause, clearly indicated that he was doing so only on Sec. 12.31(b), supra, grounds:

"THE COURT: ....

"Miss Grant, it's my impression both from the attorneys' questions and those that I've asked you and your answers to them that you would try very hard to answer any questions based on the evidence that you hear and by that alone.

"I do not believe, however, that that is in compliance with Article 12.31 of the Penal Code which says that you have to state under oath before you start that the mandatory penalty will not affect your deliberations on any issue of fact. I can understand how you feel and it's not all that unusual.

"At the same time I think that the qualification in that oath is a rather severe one and requires an absolute yes instead of probably or maybe or, 'I would try.'

"I do understand what you're telling me, so I'm going to sustain the State's challenge under 12.31."

The record reveals that the defense voir dire examination of prospective jurors Karl Kroeger, Betty Kuykendall, and Frances Brownlee, was similarly limited. These prospective jurors and Arthur C. Lawing were excused for cause solely on the ground they were disqualified under Sec. 12.31(b), supra. The death penalty may not be imposed if even one prospective juror has been excluded in violation of *Witherspoon*. *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976).

The State argues that the trial judge did not abuse his discretion when he restricted the voir dire examination of these prospective jurors to questions relating to the State's challenge under Sec. 12.31(b), supra. Quite understandably, both the State and the trial court were apparently relying upon the previous decisions holding that a juror could be properly excused for cause under Sec. 12.31(b), supra, independent of the requirements of *Witherspoon*. E. g. *Moore v. State*, supra, *Boulware v. State*, supra.

However, because these prospective jurors were excused solely under Sec. 12.31(b), supra, and inquiry of whether their exclusion comported with *Witherspoon* was foreclosed, we must in light of *Adams v. Texas*, supra, reverse the judgment. Our decision does not preclude the State from again seeking the death penalty on retrial.

The judgment is reversed and the cause remanded.

PHILLIPS, Judge, concurring.

I wholeheartedly agree that this cause must be reversed in light of *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L. Ed.2d 581 (1980). I write this concurring opinion in order to make two points.

First, I must emphatically disassociate myself from the majority opinion's implicit endorsement of Mr. Justice Rehnquist's dissent in *Adams.* As a factual matter, § 12.31(b) of our penal code routinely operates to deny the capital defendant his right to a fair and impartial jury under the Sixth and Fourteenth Amendments. § 12.31(b) does this by eliminating from the jury all persons except those who have no qualms about sending a defendant to his death. As a result, capital juries in Texas have been unacceptably prone to administer death verdicts. *Adams* properly points out this constitutional infirmity of § 12.31(b). Neither this Court nor any other state court "should be permitted" to apply its law so as to deny a criminal defendant his right to a fair jury.

Second, I wish to note the existence of further reversible error in appellant's trial. The error involves the admission of numerous extraneous offenses at the guilt/innocence phase of the trial.

On the afternoon of December 14, 1976, appellant, his girlfriend Marlene Hughes (then Smith), and his cousin Charlie Brooks were traveling down East Lancaster in Fort Worth when Hughes' car broke down. Brooks walked to a nearby used car lot and asked to test drive a Pontiac Grand Prix that was on the lot. David Gregory, a mechanic at the car lot, was told to accompany Brooks on the drive. Brooks drove to Hughes' car where appellant and Hughes were waiting. Appellant joined Brooks and Gregory, and Brooks drove to the New Lincoln Motel. Hughes was left with her disabled car.

Brooks and appellant took Gregory to Room 17 of the New Lincoln Motel. Gunshots were heard by motel employees; subsequently Brooks and appellant left the motel. Police later discovered Gregory's body in Room 17.

Although appellant was charged with intentionally causing Gregory's death while in the course of committing kidnapping, the State prosecuted appellant on a theory that enveloped more than the facts of that offense. The theory of prosecution was best set forth in the State's opening statement to the jury:

I don't know if you've ever thought about it but within our community we have—we have two worlds, two separate worlds right here in the same community. One world is that that is composed of hardworking, decent, law-abiding people. They have jobs, they work hard for what they get out of life, and they provide for their families as best they can.

David Gregory came from that world. David was a young man in his middle twenties. He and his wife, Shirley, had two children. They lived in a small house in Riverside. They rented the house from—from her mother, and the morning of December 14 of 1976, David got up and he went to work just the way he did every day of his life, and he was a mechanic by trade. He worked with hammers and pliers and wrenches that are the tools of that trade. He was a paint and body man. He worked for a used car lot out on the East Side of town, East Lancaster, Danny Sides Used Cars.

That's one world.

There's another world. It's also here in our community. It's a very different world. It's a world of narcotics, stealing, violence, a world of people who take what they want and don't give anything in return. It's a world of people who live outside our laws. It's a world of people who don't contribute anything to our community. This is a world that few of us have to deal with. This is a few—a world that few of us have to—have to see, but there's a place here in our community called the New Lincoln Motel and the New Lincoln Motel is part of that world. It's a place that's frequented by prostitutes and narcotics users. It's a place where the—the rooms rent by the hour, and that the patrons can do as they please in those rooms and no one asks any questions.

Shirley Gregory, the deceased's wife, was called to the stand as the State's first witness. She testified that her husband had been a good father and a hard worker. Mrs. Gregory's testimony showed that her husband had been a part of the decent world referred to in the State's opening argument. Marlene Hughes was called next, and she testified about the facts surrounding the breakdown of her car on December 14, 1976. In addition, Hughes testified to numerous extraneous offenses that showed appellant to be a part of the "other world" referred to in the State's opening statement.

According to Hughes both she and appellant were heroin addicts, and Brooks had used heroin in their presence. At the time of the offense she was supporting herself and appellant, with whom she lived in the New Lincoln Motel, by engaging in prostitution and shoplifting. Appellant accompanied Hughes on her shoplifting ventures, and participated in the offenses by distracting store employees. Appellant also sold the stolen property. Brooks accompanied appellant and Hughes on their shoplifting ventures. Hughes had seen both appellant and Brooks in possession of firearms, and in appellant's case the firearm was a handgun.

Hughes further testified that when her car broke down on December 14, 1976, the three were on their way to engage in shoplifting. Hughes had engaged in sexual intercourse with a used car dealer in order to obtain the use of the car on that day, and had made similar arrangements in the past. Before they left the motel to go shoplifting on December 14, 1976, appellant and Hughes used heroin.

Appellant specifically objected to the admission of all the extraneous offenses, and thus preserved his error.

It is one of the fundamental rules of criminal law that the accused is to be prosecuted for committing the offense charged, and not for committing some collateral crime or for being a criminal generally. E. g. *Riles v. State*, 557 S.W.2d 95 (Tex.Cr.

App.1977); *Alvarez v. State*, 511 S.W.2d 493 (Tex.Cr.App.1973); *Jones v. State*, 481 S.W.2d 900 (Tex.Cr.App.1972); *Young v. State*, 261 S.W.2d 836 (Tex.Cr.App.1953). Evidence of extraneous offenses may be admitted only if it is shown to be probative of a contested issue in the case, and then only if its probative value with regard to the contested issue outweighs its prejudicial impact. *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972); *Brown v. State*, 505 S.W.2d 850 (Tex.Cr.App.1974); *Cobb v. State*, 503 S.W.2d 249 (Tex.Cr.App.1973); *Hernandez v. State*, 484 S.W.2d 754 (Tex. Cr.App.1972).[1]

An extraneous offense is probative of the defendant's guilt only insofar as it helps to resolve the disputed issue or issues. On the other hand, evidence of an extraneous offense is inherently prejudicial, tends to confuse the issues at trial, and forces the defendant to defend himself against charges of which he has not been notified. *Albrecht*, supra; *Cobb*, supra; *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.1979) (Phillips, J., concurring). Accordingly, the trial court should admit an extraneous offense only after subjecting it to careful scrutiny concerning its relevance.

The State urged that the extraneous offenses in this case were admissible to show motive and the context of the criminal act. The State's theory basically was that absent evidence of appellant's criminal lifestyle, there would be no evidence to explain why appellant kidnapped and killed Gregory.

Although motive is always relevant, it is never essential. 1 Wigmore, Evidence § 118 (3d ed. 1940). Not being an element of a criminal offense, it need not be proved to establish the commission of an offense. *Rodriguez v. State*, 486 S.W.2d 355 (Tex.Cr. App.1972); *Jones v. State*, 220 S.W.2d 156 (Tex.Cr.App.1949). For evidence to warrant admission as proof of motive, it must fairly raise an inference in favor of the existence of a motive on the part of the defendant to commit the offense for which

---

1. This Court previously has enumerated the types of issues that extraneous offenses generally are employed to resolve. E. g. *Albrecht*, supra.

he is on trial. *Rodriguez*, supra; *Barnes v. State*, 95 S.W.2d 112 (Tex.Cr.App.1936); 4 Branch's Ann.P.C.2d, § 2055, p. 364.

Evidence that appellant carried a gun and was a heroin addict, a shoplifter, and a "fence" for stolen property in no way showed a motive on his part to kidnap and kill Gregory. In *Powell v. State*, 478 S.W.2d 95 (Tex.Cr.App.1972), the defendant was charged with the theft of a lawn mower. The State introduced evidence that appellant used heroin, under the theory that such evidence would tend to show a motive for the theft. This Court reversed the conviction, stating:

> ... The chain of inferences is too long and contains too many gaps to allow the introduction of evidence of needle marks alone to show possible motive for theft. The prejudicial effect of such evidence far outweighs any probative value it might have. To admit such testimony without showing some affirmative link between the theft and narcotics would show only that the accused is "a criminal generally."

.     .     .     .     .

See also *U. S. v. Mullings*, 364 F.2d 173 (2d Cir. 1966).

In appellant's case the chain of inferences necessary to show motive is longer and weaker than in *Powell*. Indeed, it is unclear how any logical connection can be made between the extraneous offenses and the commission of the present offense, unless the connection is that appellant, as a heroin addict and a career criminal, would be more likely to commit capital murder than someone who was neither an addict nor a criminal. The general rule previously stated is expressly designed to prohibit the admission of extraneous offenses on this basis.

The State asserted on appeal that absent the extraneous offenses testified to by Hughes, there was no evidence of motive. This is incorrect. It was shown at trial that appellant and Brooks stole the Grand Prix. It is reasonable to infer that appellant and Brooks killed Gregory because he was a witness to the theft. Evidence of this offense properly was admitted to show motive. This evidence clearly lessened the need for other evidence of motive.

Nor were the extraneous offenses admissible to show the context of the criminal act. Such evidence is admissible only when "... two or more offenses are so connected with each other that they constitute an indivisible criminal transaction ..." 23 Tex.Jur.2d, Evidence, § 196, p. 303. As stated in *Albrecht*, supra, the reasoning behind the rule is that:

> ... events do not occur in a vacuum and ... the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence ...

Thus the extraneous offense must occur at a time near that of the main offense. See *Saunders v. State*, 572 S.W.2d 944 (Tex. Cr.App.1978); *Jackson v. State*, 548 S.W.2d 901 (Tex.Cr.App.1977); *Calverley v. State*, 511 S.W.2d 60 (Tex.Cr.App.1974). Virtually all of the extraneous offenses committed by appellant occurred prior to December 14, 1976, the date of the offense; some of them may have substantially predated the main offense. Hughes also testified that appellant used heroin on the morning of December 14, 1976. The main offense was committed between 5 p. m. and 6 p. m., at least five or six hours after appellant used the heroin. Evidence of appellant's use of heroin was not necessary for a realistic evaluation of the main offense.

Likewise, Hughes' testimony that appellant was accompanying Brooks and her on a shoplifting venture when Hughes' car broke down was not helpful in evaluating the context of the offense. The sole material fact was that Hughes' car broke down, leaving the three stranded and necessitating the acquisition of some other mode of transportation.

In addition to testifying to extraneous offenses committed by appellant, Hughes testified to similar offenses committed by Brooks and herself, and further testified that she committed acts of prostitution.

The rule against admitting extraneous offenses applies principally to offenses committed by the defendant. As this Court has noted, however, the rationale of the rule applies to the admission of an extraneous offense committed by another where the offense implies the defendant's guilt by association. *Davenport v. State,* 482 S.W.2d 165 (Tex.Cr.App.1972). Appellant lived with Hughes, and associated with Brooks. Appellant was involved in many of the offenses committed by Hughes and Brooks. These offenses properly are viewed as extraneous offenses. They were inadmissible for the same reasons as were the extraneous offenses committed by appellant.

Summing up, the evidence of extraneous offenses was not probative of any contested issue in the case. The prejudicial impact of the evidence was great. The harm was enhanced by the State's "two worlds" theory of prosecution, which stressed appellant's lower-class criminal lifestyle. It would be difficult to posit a more classic example of an attempt to convict a defendant for being a criminal generally.

The State would do well to avoid introducing the extraneous offenses at any re-trial.

CLINTON, Judge, concurring.

But for two provocative observations made in a single sentence in the dissenting opinion I would not write in this cause. Since my dissent in *Russell v. State,* 598 S.W.2d 238, 255 (Tex.Cr.App.1980) was handed down with the majority opinion March 12, 1980, rehearing was denied April 23, 1980 and the opinions were published in the advance sheet dated June 24, 1980, I leave to Mr. Justice Rehnquist the matter of whether his June 25, 1980 dissent in *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 2529, 65 L.Ed.2d 581 (1980) is "like" my dissent in *Russell.*

In *Russell,* supra at 257 I opined:

"Where the jury is not the assessor of punishment in a capital case but is

charged with finding facts upon which the assessment is made, the *Witherspoon holding*[1] gives way to another doctrine for testing the qualification of veniremen that *Witherspoon* . . . took express pains not to preclude. That is, as subsequently developed in *Lockett v. Ohio,* 438 U.S. 586, 596, 98 S.Ct. 2954, 2960, 57 L.Ed.2d 973 (1978):

'Each of the excluded veniremen in this case made it "unmistakenly clear" that they could not be trusted to "abide by existing law" and "to follow conscientiously the instructions" of the trial judge. *Boulden v. Holman,* 394 U.S. 478, 484, 89 S.Ct. 1138, 1142, 22 L.Ed.2d 433 (1969)'."

My conclusion in *Russell*—"that a good deal more manifestation than merely acknowledging 'the magic phrase' of § 12.-31(b) should be required for disqualification"—is, I submit, more "like" the conclusion of the Supreme Court in *Adams v. Texas,* supra.

Today the Court follows *Adams* and, of course, I concur in that.

ROBERTS, Judge, dissenting.

I dissent to the reversal of the judgment of guilt, for the reasons stated in my opinion in *Evans v. State,* 614 S.W.2d 414 (Tex.Cr.App.1980).

I also take exception to the statement in the Court's opinion that "a majority of this Court might well agree that Mr. Justice Rehnquist, in his dissenting opinion [in *Adams v. Texas*], states the proper view . . . ." Justice Rehnquist's opinion was that *Witherspoon* need be followed no longer, because juries no longer have unguided discretion to impose the death penalty. A majority of this Court has never indicated any doubt that *Witherspoon* was anything other than alive and well in Texas. See *Hovila v. State,* 532 S.W.2d 293 (Tex.Cr.App.1975), and the cases cited in *Adams v. Texas,* 448 U.S. 38, 47 n. 4, 100 S.Ct.

---

**1.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2521, 2527 n. 4, 65 L.Ed.2d 581 (1980). Only recently Judge Clinton, like Justice Rehnquist, concluded that *Witherspoon* should not apply to Texas' capital punishment scheme; like Justice Rehnquist's, his reason was that the jurors no longer have the discretionary task of assessing punishment in a capital case. *Russell v. State*, 598 S.W.2d 238, 255 (Tex.Cr.App.1980) (Clinton, J., dissenting). No other judge joined this opinion. Yet today we are told that "a majority of this Court might well agree" with that position.

The record of this Court is clear to me, and it cannot be changed now. This Court always has held that *Witherspoon* applied to our capital sentencing procedure, and that Section 12.31(b) was independent of it, and that *Witherspoon* was not violated by the excusing of a juror under Section 12.-31(b). There simply was no support for this Court's long-held position in any of the opinions in *Adams v. Texas*.

## CONCURRING OPINION TO OVERRULING STATE'S MOTION FOR REHEARING WITHOUT WRITTEN OPINION

TEAGUE, Judge.

I concur in the majority's action for the reasons set forth in my Concurring Opinion to Overruling State's Motion for Rehearing Without Written Opinion in *Pierson v. State*, 614 S.W.2d 102 (1981).

## DISSENTING OPINION TO DENIAL OF STATE'S MOTION FOR REHEARING WITHOUT WRITTEN OPINION

McCORMICK, Judge.

For the reasons set forth in my dissenting opinion in *Pierson v. State*, 614 S.W.2d 102 (1981), I dissent to the action of the majority in reversing and remanding a judgment of guilt that is admittedly free of error. Pursuant to the motion filed by the State, the judgment in this cause should be reformed to reflect a punishment of life imprisonment.

DALLY, J., joins.