COURT OF APPEALS

                                                 SECOND DISTRICT
OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-097-CR

 

 

PEDRO REYES                                                                                  APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

              FROM
THE 371ST DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

I. INTRODUCTION

A
jury found Appellant Pedro Reyes guilty of aggravated assault with a deadly
weapon, and the trial court sentenced him to twenty years=
confinement.  In two issues, Reyes argues
that factually insufficient evidence exists to sustain his conviction and that
he received ineffective assistance of counsel. 
We will affirm.








II. FACTUAL AND PROCEDURAL BACKGROUND

Joe
Portales went to Buffalo Wild Wings one night to watch a boxing match.  Reyes, Oscar Rodriguez, J.J. Garcia, Roger
Garcia, and Bobby Mathis were also there. 
The entire group, who knew each other from high school in Lake Worth,
went to Aqua Lounge to continue the evening. 
Joe left his truck at Buffalo Wild Wings and rode with Oscar, J.J., and
Roger in Oscar=s
Chevrolet Tahoe. 

The
group stayed at Aqua Lounge until it closed. 
Oscar drove Roger, Bobby, and Joe to a residence located at 3112
Northwest 32nd Street so that Bobby could pick up the keys to his truck.  Roger and Bobby got out of Oscar=s
Tahoe and went inside while Oscar and Joe stayed in the Tahoe.  Oscar was in the driver=s
seat, and Joe was behind him in the rear passenger seat talking on his cell
phone when someone shot a gun at the Tahoe. 
The bullet hit Joe in the face, knocking out several of his lower teeth.  Oscar looked up and saw Reyes standing in
front of the Tahoe with a gun; Reyes said, AWelcome
to Northwest 32nd, bitches.@  Oscar called 911 and drove to a nearby gas
station to wait for police.  

Reyes
lived with his girlfriend Amanda Salas and several other individuals across the
street and two houses down from the residence where Joe was shot.








Officer
Anthony Stags responded to the 911 call and drove to the gas station.  After an EMT arrived to take care of Joe,
Officer Stags questioned Oscar about the shooting.  Oscar explained that the shooting had taken
place at a house located at 3112 Northwest 32nd Street, and Officer Stags drove
Oscar to that location.  Officer Stags
did not get out of his vehicle, but he shined a light in the direction of the
house before returning to the gas station. 
Oscar also pointed out Reyes=s
house to the officer. 

Joe
lost five teeth and the bone that supported them.  He required extensive reconstructive
surgeries. 

III. FACTUAL SUFFICIENCY
OF THE EVIDENCE

In
his first issue, Reyes argues that factually insufficient evidence exists that
he was the shooter and that he possessed the requisite mental state to support
his conviction.

A. 
Standard of Review








When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Steadman v. State, 280 S.W.3d 242, 246
(Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s
determination is manifestly unjust.  Steadman, 280 S.W.3d at 246; Watson,
204 S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, although legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.

Unless
we conclude that it is necessary to correct manifest injustice, we must give
due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000); see Steadman, 280 S.W.3d at 246.  Evidence is always factually sufficient when
it preponderates in favor of the conviction. 
Steadman, 280 S.W.3d at 247; see Watson, 204 S.W.3d at
417.








In
determining whether the evidence is factually insufficient to support a
conviction that is nevertheless supported by legally sufficient evidence, it is
not enough that this court Aharbor
a subjective level of reasonable doubt to overturn [the] conviction.@  Watson, 204 S.W.3d at 417.  We cannot conclude that a conviction is
clearly wrong or manifestly unjust simply because we would have decided
differently than the jury or because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson, 23 S.W.3d at 12; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Our deference in this regard safeguards the
defendant=s
right to a trial by jury.  Lancon v.
State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008).

An
opinion addressing factual sufficiency must include a discussion of the most
important and relevant evidence that supports the appellant=s
complaint on appeal.  Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B. 
Elements of Aggravated Assault

A
person commits assault if he intentionally, knowingly, or recklessly causes
bodily injury to another.  Tex. Penal
Code Ann. ' 22.01(a)(1)
(Vernon Supp. 2009).  The assault becomes
an aggravated assault if the person uses or exhibits a deadly weapon.  Id. ' 22.02(a)(2)
(Vernon Supp. 2009).

 A person acts intentionally with respect to
the nature of his conduct or to a result of his conduct when he has the
conscious objective or desire to engage in the conduct or cause the result.  Id. '
6.03(a) (Vernon 2003).  A person acts
knowingly with respect to a result of his conduct when he is aware that his
conduct is reasonably certain to cause the result.  Id. '
6.03(b). 

C. Factually Sufficient
Evidence that Reyes was the Shooter

and Possessed the
Requisite Mental State

 








Viewing
the evidence in a neutral light, favoring neither party, the following evidence
supports Reyes=s
argument that factually insufficient evidence exists to connect him to the
shooting.  Joe never saw anyone outside
of Oscar=s
Tahoe, and although Oscar saw Reyes holding a gun outside of the Tahoe, Oscar
did not see Reyes actually shoot the gun. 
Evidence at trial suggested that police did not investigate the
residence where Joe had been shot to look for spent bullet casings or other
evidence; Crime Scene Officer Bill Yeager testified that he was not asked to
process the residence at 3112 Northwest 32nd Street as a crime scene and that a
spent bullet casing would be Avery,
very important@
evidence because it could contain fingerprints or could match a recovered firearm.  Officer Yeager could not definitively say
whether Joe had been shot inside or outside of the Tahoe or that the shooting
had occurred somewhere other than the gas station.  Neither Bobby nor Roger testified at trial,
and no evidence exists that theyCor
anyone other than Oscar and JoeCheard
or saw the shooting.  A search of Reyes=s
home produced no evidence linking him to the shooting.  Salas testified that she had lived with Reyes
at the time of the shooting and had never seen a gun in the house or Reyes
carry a gun.  She testified that Reyes
had arrived home at 2:39 a.m. on the night of the shooting, and the police
records show that Oscar had called 911 at 2:53 a.m.  Salas testified that Reyes had talked on the
phone for some time when he got home that night but that he had not left the
house again. 








Reyes
points to the above evidenceCor
lack thereofCand
argues that no evidence exists that someone saw him fire a shot, that no
physical evidence links him to the shooting, and that no one other than Oscar
puts him at the scene of the shooting. 
However, Oscar=s testimony is enough; the
jury heard him testify that he saw Reyes standing in front of the Tahoe with a
gun after Joe was shot and heard Reyes say, AWelcome
to Northwest 32nd, bitches.@  See Steadman, 280 S.W.3d at 246;
Johnson, 23 S.W.3d at 9; see also Aguilar v. State, 468 S.W.2d 75, 77
(Tex. Crim. App. 1971) (holding testimony of eyewitness alone sufficient to
support jury=s
verdict).  The jury was free to believe
any or all of the testimony before it.  See
Lancon, 253 S.W.3d at 706; see also Fuentes v. State, 991 S.W.2d
267, 271B72
(Tex. Crim. App.) (noting that Ato
avoid intruding on the jury=s
role as arbiter of the weight and credibility of the evidence, a factual
sufficiency review remains deferential to the jury=s
verdict@), cert.
denied, 528 U.S. 1026 (1999). 
Additionally, Officer Yeager testified that the damage to Oscar=s
Tahoe was consistent with a bullet entering the driver=s side
window and exiting the passenger sideCwhich
matched Oscar=s
account of what had happened. 








Reyes
also argues that factually insufficient evidence exists that he intentionally
or knowingly shot Joe because Officer Yeager could not exclude the possibility
that the shot fired at the Tahoe ricocheted and hit Joe.  Reyes also argues that there was no
motive.  However, the jury was entitled
to infer from the evidence that, by shooting a gun into a vehicle, Reyes had
the Aconscious
objective or desire to engage in the conduct or cause the result@ or
was Aaware
that his conduct [was] reasonably certain to cause the result@ of
injuring Joe.  Tex. Penal Code Ann. '
6.03(a), (b) (defining Aintentionally@ and
Aknowingly@); see
Hart v. State, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (noting that
direct evidence of the requisite mental state is not required); Leal v.
State, 800 S.W.2d 346, 349 (Tex. App.CCorpus
Christi 1990, pet. ref=d).  Additionally, the State has no burden to
prove motive, which is not an essential element of a criminal offense.  See Loudres v. State, 614 S.W.2d 407,
411 (Tex. Crim. App. 1980).

Viewing
the evidence in a neutral light, we find no objective basis for holding that
the jury=s
verdict was clearly wrong or manifestly unjust or that it is contradicted by
the great weight and preponderance of the evidence.  See Lancon, 253 S.W.3d at 704; Watson,
204 S.W.3d at 414B15, 417.  Rather, the evidence presented at trial was
sufficient to support the jury=s
verdict, and no contrary evidence exists that would render the evidence
factually insufficient under the applicable standard of review.  See Lancon, 253 S.W.3d at 704; Watson,
204 S.W.3d at 414B15, 417.  Accordingly, we hold that the evidence is
factually sufficient to support Reyes=s
conviction, and we overrule his first issue.

IV.  EFFECTIVE ASSISTANCE
OF COUNSEL

In
his second issue, Reyes argues that his counsel was ineffective for not
objecting to the prosecutor=s
comment on Reyes=s failure to testify during
the State=s
closing argument. 

A. 
Standard of Review








To
establish ineffective assistance of counsel, an appellant must show by a
preponderance of the evidence that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62B63
(Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999).[2]








In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each
case.  Thompson, 9 S.W.3d at
813.  The issue is whether counsel=s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688B89,
104 S. Ct. at 2065.  Review of counsel=s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel=s conduct fell within a wide
range of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Thompson, 9
S.W.3d at 813B14.  AIn
the majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel=s
actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@  Id. (quoting Thompson, 9 S.W.3d
at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State,
226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

B. 
Counsel Not Ineffective

Here,
Reyes did not testify at trial.  During
the State=s
closing argument, the prosecutor argued,

[Reyes]
lived across the street.  As the defense
counsel pointed out in their questioning, [Oscar] had to drive by [Reyes=s] house to get to
the driveway where they stopped, giving [Reyes] enough time to walk from his
car or his home and walk up to the driveway after [Roger and Bobby] went inside
and shoot twice.  Why?  I have no idea.  And I don=t want you to go back in the room and try to
figure out why, because the only person who knows why is the Defendant, and
that=s why, under the law
in Texas, the State is not required to prove that as an element of the offense.

 

Reyes did not object to the
State=s
argument.   

Reyes
filed a motion for new trial but did not raise the issue of ineffective
assistance in his motion.  The record is
silent as to defense counsel=s
reasons for not objecting to the State=s
closing argument.  Generally, a silent record
that provides no explanation for counsel=s
actions will not overcome the strong presumption of reasonable assistance.  See Rylander v. State, 101 S.W.3d 107, 110
(Tex. Crim. App. 2003); Edwards v. State, 280 S.W.3d 441, 445 (Tex. App.CFort
Worth 2009, pet. ref=d).  Reyes even points out on appeal that A[p]ossibly
counsel did not want to call attention to the State=s
argument.@








Based
on the record before us, in light of the strong presumption of reasonable
professional assistance by defense counsel, and in the absence of any
opportunity for defense counsel to explain his motive for not objecting to the
State=s
closing argument, we cannot say that Reyes has met his burden of showing by a preponderance
of the evidence that his trial counsel=s
representation fell below the standard of prevailing professional norms.  See Strickland, 466 U.S. at 690, 104
S. Ct. at 2066; Rylander, 101 S.W.3d at 110; Thompson, 9 S.W.3d
at 813; Edwards, 280 S.W.3d at 445; see also Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (stating that Atrial
counsel should ordinarily be afforded an opportunity to explain his actions before
being denounced as ineffective@).  We overrule Reyes=s
second issue.

                                                   V.
CONCLUSION

Having
overruled Reyes=s two issues, we affirm the
trial court=s
judgment.

 

SUE WALKER                                                                                             JUSTICE

 

PANEL:
GARDNER, WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:
April 22, 2010











[1]See Tex. R. App. P. 47.4.





[2]Because, as set forth
below, the record before us does not support a finding that Reyes=s defense counsel was
ineffective under Strickland=s first prong, we do not include an analysis
of Strickland=s second prong.  See Strickland, 466 U.S. at 697, 104
S. Ct. at 2069 (providing that appellate courts need not address both prongs of
the inquiry if the defendant makes an insufficient showing on one prong).