**Opinion issued January 7, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-01147-CR

_____

### JACQUES FRANK QUINN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 12CR0465**

---

## MEMORANDUM OPINION

A jury convicted appellant, Jacques Frank Quinn, of third-degree felony assault-family violence, and, after finding one enhancement paragraph true, assessed punishment at 20 years' confinement. *See* TEX. PENAL CODE ANN. §

22.01(b)(2)(A) (Vernon 2011). In two points of error on appeal, appellant contends that (1) the evidence is legally insufficient, and (2) the trial court erred by admitting evidence of extraneous offenses. We affirm.

## BACKGROUND

At the time Lakeisha Brown was introduced to appellant, she resided only with her three children. Roughly three months later, Brown's friend, Patrice Bell, moved into Brown's apartment to live with Brown and her children. After two more months, appellant joined Bell, Brown, and the three children in occupying the apartment. The six individuals resided together for approximately three months before the occurrence of the assault for which appellant was convicted, from November of 2011 until February 9, 2012.

Brown testified at trial that she and appellant began dating very soon after they met. They maintained their romantic relationship while living apart and for the duration of their cohabitation. On February 8, 2012, the evening before the assault, Brown put her children to bed around 7:30 p.m. just before she retired. At that time, Bell was in the living room with her friend, Jay Lou. Brown testified that appellant was not inside the apartment when she went into her room to sleep, nor was he inside when she awoke around midnight.

Apparently, however, appellant did return to the apartment at some time between Brown's midnight and 3:30 a.m. awakenings. Brown's testimony

2

indicates that at or about 3:30 a.m., she awoke to a partially illuminated apartment and appellant "panting up and down the house" and "acting different . . . like he ha[d] something to hide." She characterized appellant as "frantic" and as having a "glassy look," ultimately stating her belief that he was "on" or "had taken something."

Throughout appellant's stint of abnormal behavior on the evening of the assault, he and Brown argued for an hour and a half about the lights being on, approximately from 3:30 a.m. to 5:00 a.m. During the lengthy confrontation, appellant repeatedly screamed the names "Lakeshia," "Patrice," and "Enriqia," which Brown thought was a request for a threesome. When Brown asked why he was screaming those names, appellant responded, "We're all getting ready to go to heaven together."

In the midst of his name-screaming, around 7:00 a.m., appellant advised Brown to leave the apartment with her children: "It would be your best bet to get these . . . kids out of here." In response to Brown's request for clarification, appellant said it was "for their safety." Brown then prepared to leave with her eldest daughter, but before they could leave through the front door, appellant darted to the couch in the living room, on which Bell was sleeping. Appellant leaned over Bell and said, "Patrice, baby, wake up. Are you ready to go to heaven together? We all fixing to go to heaven together."

3

Half asleep, Bell raised her arm to avert further action by appellant. Appellant counterattacked by biting Bell's forearm and keeping his teeth clamped down. It was not until Brown used a cooking pot to hit appellant twice in the head that he released Bell's arm. Appellant then turned his focus to Brown and used his hands to choke her. Soon after appellant targeted Brown, a neighbor, Linda Outlaw, intervened and escorted the two women and the children to her apartment, where they all remained while Brown called 911.

When the police and EMS arrived at the apartment, appellant was still screaming the names he had been shouting earlier. While in police custody, appellant continued to scream and demonstrate aggressive and erratic behavior. Police Officer J. Davis testified that appellant was talking incoherently, answering himself, making sexual comments, talking to God and being very aggressive. Davis believe that appellant was under the influence of some type of narcotic substance, but she did not know what. While on the way to the police department, appellant continued acting bizarre and inappropriately, even biting himself so badly that he needed stitches.

Appellant testified on his own behalf to his version of the events. He stated that on the night in question he, Bell, Bell's friend Veronica, and Veronica's cousin Jay Lou had been sitting around smoking marijuana. At some point, the women went into another room, leaving appellant and Jay Lou in the living room.

4

Appellant testified that he did not knowingly use any drugs other than marijuana that night. At one point he left the room, leaving a cup of Kool-Aid that he was drinking alone in the room with Jay Lou. When he returned, he continued drinking the Kool-Aid and started to feel "real, real crazy," "not [himself]," and like he had "never felt in his life." Veronica and Jay Lou left and appellant woke up Brown and asked for help. He then "blacked out" did not remember anything until he woke up in the hospital getting stitches. Appellant testified that it was his belief that Jay-Lou put something in his Kool-Aid that caused his erratic behavior. He denied ever using the hallucinogenic drug, PCP.

During his testimony, appellant was cross-examined about 13 crimes that were either felonies or crimes of moral turpitude. The State was also permitted to introduce three prior misdemeanor convictions for marihuana possession, which it contended was admissible to rebut appellant's affirmative defense of involuntary intoxication.

On rebuttal, the State called Bell, who testified that a few months prior to the assault, she had seen appellant use PCP.

## SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review and Applicable Law

Appellant presents his first issue as one of legal sufficiency. At trial, appellant admitted that he bit Bell, but disputed that he possessed the requisite

5

intent or mens rea. When reviewing the legal sufficiency of the evidence in a criminal case, we review all of the evidence in a light most favorable to the verdict, and we decide if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781 (1979); *Ross v. State*, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).  A person commits assault if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. TEX. PENAL CODE ANN. § 22.01(a)(1). The offense is enhanced to a third-degree felony when "it is shown on the trial of the offense that the defendant has been previously convicted of an offense under this chapter, Chapter 19, or Section 20.03, 20.04, 21.11, or 25.11 against a [family member]." *Id.* at § 22.01(b)(2)(A) (Vernon Supp. 2013).   The jury charge included the following with respect to the applicable mens rea:

> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to the circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.  A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

> A person acts recklessly, or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur.  The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would

exercise under all the circumstances, as viewed from the actor's standpoint.

## B. Legal Sufficiency of Evidence of Mens Rea

Intent may be inferred from circumstantial evidence such as appellant's acts, words, and conduct. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Dominguez v. State*, 125 S.W.3d 755, 761 (Tex. App.—Houston [1st Dist. 2003, pet. ref'd). Here, appellant was arguing with Brown when he attempted to wake Bell, who was trying to stay out of the argument. While Bell tried to stay out of the fight, she put up her arm and pushed appellant away, at which point appellant bit her. Appellant did not let go until Brown hit him several times with a kitchen pot. From this, the jury could have reasonably concluded that appellant acted intentionally, knowingly, or recklessly when he bit Bell and caused her injury. Indeed, the jury could also have inferred appellant's intent from the extent of Bell's injury, which was bleeding and required treatment at a hospital. *See Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).

Further, the police officer who responded to the scene testified that she believed that appellant was under the influence of some type of narcotic substance, and in fact, appellant admitted voluntarily using marihuana earlier in the evening. Based on appellant's willingness to voluntarily ingest marihuana in the time immediately preceding the offense, the jury could also have concluded that appellant had voluntarily ingested either tainted marihuana or some other substance that caused his erratic behavior, even though no one saw him do so. Voluntary intoxication is not a defense to criminal

7

behavior, *see* TEX. PEN. CODE § 8.04(a), and a defendant cannot claim to be involuntarily intoxicated when he admits to voluntarily smoking marihuana and should know that marihuana cigarettes often come with other substances added. *See United States v. Bindley*, 157 F.3d 1235, 1243 (10th Cir. 1998). Indeed, appellant testified that he was aware that cigarettes were often dipped in PCP.

Nevertheless, appellant argues that the evidence of mens rea is insufficient because (1) he had no motive to bite Bell, and (2) the State did not prove that appellant was voluntarily intoxicated. However, there is no requirement that the State prove motive, *see Loudres v. State*, 614 S.W.2d 407, 411 (Tex. Crim. App. 1980) (noting that motive is not an element of a crime), and the law presumes that a defendant is sane and intends the consequences of his actions. *See Ruffin v. State*, 270 S.W.3d 586, 591–92 (Tex. Crim. App. 2008).

Accordingly, the evidence is legally sufficient.

## C. Rejection of Involuntary Intoxication Affirmative Defense—Factual Sufficiency

The jury charge instructed the jury that "involuntary intoxication is a defense to prosecution for an offense when it is shown that the accused has exercised no independent judgment or volition in taking the intoxicant and that as a result of his intoxication the accused did not know that his conduct was wrong." This charge is consistent with case law holding that involuntary intoxication is an affirmative defense to a criminal indictment if, at the time of the alleged offense, the defendant, as a result of a severe mental defect caused by involuntary intoxication,

did not know that his conduct was wrong. *See Mendenhall v. State*, 77 S.W.3d 815, 817–18 (Tex. Crim. App. 2002).

Although phrased as a legally sufficiency challenge, appellant also seems to be complaining about the jury's rejection of his involuntary intoxication. A factual sufficiency review is still appropriate for affirmative defenses for which the defendant has the burden of proof by a preponderance of the evidence. *See Matlock v. State*, 392 S.W.3d 662, 671 (Tex. Crim. App. 2013). A defendant bears the burden to prove involuntary intoxication by a preponderance of the evidence. *See* TEX. PENAL CODE ANN. § 2.04(d) (Vernon 2003). In reviewing such a challenge, we view the entirety of the evidence in a neutral light, but do not usurp the function of the jury by substituting our own judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony. *Matlock*, 392 S.W.3d at 671. We may sustain a defendant's factual-sufficiency claim only if, after setting out the relevant evidence and explaining precisely how the contrary evidence greatly outweighs the evidence supporting the verdict, we clearly state why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *Id.*

To support his involuntary intoxication defense and counter the evidence discussed above that appellant acted intentionally, knowingly, or recklessly, appellant testified that his friend, Jay Lou, had put something in appellant's Kool-

Aid that made him feel "real, real crazy," and "not myself." Appellant also testified that he "blacked out" and did not remember anything of the events in question until he was taken to the hospital to get stitches after he bit his own finger. However, the jury, as factfinder, was free to disbelieve this evidence, and this Court may not usurp the function of the jury by substituting its judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony. *Id.*

Accordingly, the evidence supporting the jury's rejection of appellant's affirmative defense is not greatly outweighed by the contrary evidence. *Matlock*, 392 S.W.3d at 671.

We overrule appellant's first point of error.

## EXTRANEOUS OFFENSES

In his second point of error, appellant contends the trial court erred by allowing the State to introduce evidence of three prior misdemeanor convictions for possession of controlled substances.

### A. *Standard of Review and Applicable Law*

We review a trial court's admission of extraneous offense evidence under an abuse of discretion standard. *Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004); *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996); *Blackwell v. State*, 193 S.W.3d 1, 8 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). As long

10

as the trial court's ruling was within the "zone of reasonable disagreement," there is no abuse of discretion, and the ruling must be upheld. *Thomas v. State*, 126 S.W.3d 138, 143 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

Rule 404(b) prohibits the introduction of extraneous offenses to show character conformity. TEX .R. EVID. 404(b); *Page*, 137 S.W.3d at 78; *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); *Blackwell*, 193 S.W.3d at 9. Extraneous-offense evidence may be admissible, however, when relevant beyond character conformity, to show, for example, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Moses*, 105 S.W.3d at 626; *Blackwell*, 193 S.W.3d at 9. Evidence of an extraneous offense is also admissible if it is relevant to a fact of consequence apart from the tendency to show conduct in conformity with character. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). Further, evidence of extraneous offenses is admissible under Rule 404(b) when it is offered to rebut an affirmative defense or a defensive issue that negates one of the elements of the crime. *Id.*

Here, appellant argued that he did not voluntarily ingest any substance that would have caused him to act as he did when he bit Bell. He contended that his friend, Jay Lou, must have put something in his Kool-Aid when appellant was out of the room. Thus, evidence that appellant voluntarily took drugs on other occasions was relevant to rebut appellant's involuntary intoxication affirmative

defense, which would negate the element of appellant's mens rea. *See Wheeler v. State*, 67 S.W.3d 879, 887 (Tex. Crim. App. 2002) (holding evidence of a defendant's other similar acts of sexual misconduct admissible to contradict and rebut defensive theory of being framed); *see also People v. Herdman*, 310 P.3d 170, 180 (Colo. App. 2012) (holding use of cocaine not offered to show appellant's bad character or any propensity to act in accordance with any bad character, but to rebut claim of involuntary intoxication).

## B. Harmless Error

Even if we assume that the trial court abused its discretion by admitting the extraneous-offense testimony, we will not reverse the judgment if the error was harmless. *See* TEX. R. APP. P. 44.2(b). More precisely, we will not reverse a trial court's judgment based on the erroneous admission of evidence unless the error affects a substantial right. *See id.*; *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *see also Ruiz v. State*, 293 S.W.3d 685, 695 (Tex. App.—San Antonio 2009, pet. ref'd) (holding admission of extraneous-offense evidence to be non-constitutional error). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Stated conversely, a substantial right is not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair

assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

The three misdemeanor drug convictions about which appellant complains were hardly the only evidence of appellant's drug use presented at trial. Appellant, testifying on his own behalf, admitted that he regularly used marihuana and Ecstacy in the months preceding the offense, and appellant also admitted smoking marihuana the night of the offense. Indeed, the three misdemeanor convictions appellant's were not appellant's only drug convictions. Appellant admitted that he was convicted of possession of cocaine, a felony, and served three years in prison as a result. And, in addition to the drug convictions, there was evidence of 13 other convictions, all of which were either felonies or crimes of moral turpitude.

After examining the record as a whole, we cannot say that the error, if any, affected a substantial right of appellant.

We overrule point of error two.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

13