Thomas EGGLESTON, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 40766.

Court of Criminal Appeals of Texas.

Nov. 22, 1967.

Rehearing Denied Jan. 17, 1968.

Mayo J. Galindo, Eugene B. Labay, San Antonio, for appellant.

James E. Barlow, Dist. Atty., San Antonio, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Judge.

## OPINION

The conviction is for murder; and the punishment was assessed at ninety-nine years.

The jurisdiction of the 175th District Court of Bexar County to render the judgment of conviction in this case is challenged.

In appellant's brief the challenge is based on the following ground:

"The Court erred in overruling Defendant's plea to the jurisdiction of the Court. Unless he happens to be the Presiding Judge, the Judge of the 144th District Court of Bexar County, Texas, does not have the power or authority to transfer a criminal cause to the 175th District Court."

In urging this ground as error the appellant alleged in his amended motion for new trial:

"The error of the Court in exercising its jurisdiction in this cause, Cause No. 65,766, and the indictment thereof having previously been returned by the grand jury into the 144th District Court of Bexar County, Texas, and said cause having been subsequently transferred to the 175th Judicial District Court of Bexar County, Texas, in a manner not authorized by law."

It is undisputed that the 144th District Court acquired jurisdiction of this cause by the return of the indictment by the grand jury into said Court, and then by written order it transferred said cause to the 175th District Court with the consent of that Court, and said order was entered upon the minutes of the Court.

The statute (Art. 199(37) R.C.S.) expressly provides that its intent is that the 144th District Court and the 175th District Court of Bexar County shall give preference to criminal cases, while the other seven District Courts shall give preference to civil cases although, each Court has concurrent jurisdiction in both civil and criminal cases. To expedite and equalize the dockets of said Courts, the statute further provides that the Presiding Judge shall transfer, or cause to be transferred, upon approval of the Judges of said Courts, causes from one Court to another Court. The purpose and intent of the statute in providing for the transfer of cases, upon the approval of the Judges of said Courts, could not be reasonably construed as requiring the approval of all nine Judges, but instead, that it only requires the approval of the Judge of the Court in which said cause is pending and the Judge of the Court to which the cause is transferred. It is evident that the statutory provisions for the transfer of cases, upon approval of the Judges, resulted in the Judges of the 144th and 175th District Courts, on November 23, 1964, entering a joint order for the transfer of cases between them upon the minutes of said Courts; and in pursuance thereto, on February 23, 1966, a joint order was entered transferring this cause.

From a consideration of the statute as a whole, the conclusion is reached that the transfer of this case, upon the order showing the approval of the Judges of the 144th and 175th District Courts, was authorized by virtue of the power and authority conferred by the statute. It appears that all of the procedural requirements pertaining to the making of the transfer order have been sufficiently complied with, and that the jurisdiction of the 175th District Court was legally invoked in this case.

It is contended that the trial court erred in admitting evidence showing the search of the appellant's room in the house where he lived with his mother, and in admitting in evidence the fruits of the search.

■ The testimony of the state reveals that the officers went to the appellant's mother's house about 6 p. m., December 28, 1965, and when she came to the door they identified themselves and she said: "Yes, I am expecting you." and invited them in; that they advised her that they wanted to search the house, telling her that she did not have to give consent, and they explained and read a written consent form to her which they filled out, and she signed it. The written consent was introduced in evidence. Upon a search of the house they found a box of shoe polish and a pistol.

The mother of the appellant, called by the state, testified that the appellant telephoned her about 5 or 6 p. m., December 28, telling her that the officers were coming to search the house and to "Let them search." On cross-examination she testified that when the officers identified themselves at the door, she stood there awhile, and then the officer said: "We don't have a search warrant, but it would make it better for you and for me if you let us search—easier."; that she asked them into the house, and an officer filled out the paper which was read to her and she signed it.

The Court charged the jury on the issue of whether the appellant and his mother consented to the search, and instructed the jury that unless they found such consent was given beyond a reasonable doubt not to consider the items seized or any testimony relating to the search.

The grounds urging that the search of the house was illegal, are overruled.

■ The admission in evidence of the entire examining trial testimony of the state's witness, Jerry Eng, is presented as a ground of error. In support of his position, the appellant urges that an impeached witness cannot be supported by a showing that he made statements as to other matters, upon which he was not impeached, corresponding with his testimony on the trial.

Jerry Eng with his brother, Jesse, the deceased, pursued the appellant from the store where by the use of a pistol, he had robbed their mother, Mrs. Eng. After a short distance, the appellant began shooting the pistol toward Jesse and one shot hit him in the left eye and entered his head.

Jerry Eng testified on the examining trial. During cross-examination on this trial, Jerry testified that he did not remember stating that the "man was shooting up in the air." At this time the appellant introduced in evidence, without objection, certain pages of the transcript of the testimony of Jerry Eng on the examining trial. The state then offered the remainder of his testimony given on such occasion. Both appear in the record as State's Exhibit 3 and Defendant's Exhibit A. It is impossible to tell therefrom which portion of the testimony was introduced by the appellant and which was introduced by the state. It follows therefore that no error has been presented for consideration.

It is insisted that the trial court erred in refusing to enter an order allowing counsel appointed to represent the appellant $250 for expenses in connection with the investigation of this case.

The offense was committed December 27, 1965; and the appellant was arrested on December 28, 1965. On December 30, two attorneys were appointed to represent the appellant. Appointed counsel requested an examining trial on January 3, 1966, which was granted and the trial set for January 14. On January 6, counsel filed a motion in the justice court in which the examining trial was set requesting the payment of $250 for expenses. This motion was heard and denied. On January 7, the same motion was presented to the District Judge who had appointed counsel for appellant. The motion was heard and denied. Prompt payment without delay of the $250 to counsel was urged in said motions.

The indictment was returned on February 23, 1966. On July 26, the District Judge ordered the payment of $250 to the investigator for services rendered for the appellant.

464

Art. 26.05, Vernon's Ann.C.C.P., in providing for compensation of counsel appointed to defend, reads in part:

Sec. 1 "(c) For expenses incurred for purposes of investigation and expert testimony, not more than $250.00;"

■ In light of the statute allowing expenses *incurred* for purposes of investigation, it appears that the refusal to pay at the time of the request here made for such services to be rendered did not constitute an abuse of discretion.

■ Another ground relied on for reversal is that the trial court erred in permitting Gee Eng and Jerry Eng (both Chinese) to testify as to the identity of the appellant. To support this ground, the appellant contends that the officers arrested the appellant because the occupants of their car, Lovings and Richardson, identified the appellant as a man they picked up near the scene of the crime, without any knowledge of the killing, except what they had read in the newspapers; and that the arrest of the appellant resulted in lineups in which he was identified by Gee and Jerry Eng.

While working in the family store about 11 a. m., December 27, Jerry Eng sold and delivered a box of shoe polish to the Negro "man" who robbed his mother moments later at the cash register; that after his mother pointed to the "man," he and his brother, Jesse, pursued him, and the "man" shot at Jesse several times, the last shot killing him; and that he was within thirty feet of the "man" at times.

Thomas Ross testified that he saw two Chinese boys pursuing a Negro who had a pistol in his hand; that he was about twenty feet from him when he shot twice and he (Ross) later heard three shots; that the Negro had a paper bag in his left hand; that he saw the Negro get into a Chevrolet car with two men and drive away, which he pursued but was outdistanced, and returned to the scene of the robbery where he told the officers of the events which he saw oc-

cur. While testifying at the trial, he identified the appellant as the man he saw running.

Officer Castillon testified that he arrived at the scene of the robbery and killing shortly after they occurred; that he obtained a description of the "man," the type of clothes, his size, that he was a Negro, and the car the man entered, which was driven away; that he talked with Richardson and Lovings (the two men who had picked up the Negro) the next morning, and they went to the scene and went over the route with him while they were discussing the pick up of the Negro about noon December 27; that Richardson and Lovings recognized and pointed out a man on the sidewalk, and he arrested him, and placed him in the "hold over" about 1:30 p. m., December 28; and continued investigating the case until he was identified by the Engs.

The testimony further shows that the appellant was taken before a magistrate about 5:15 or 5:20 p. m., December 28, where the magistrate informed him of the accusation against him, and fully advised him of his rights; that after he was advised of his rights, the appellant made three telephone calls, one to an attorney, and to whom the magistrate also talked, telling the attorney of the accusation and asked him to come to his Court. Another call was made to his mother.

During the appellant's detention from 1:30 p. m., December 28, until he was identified in a five-man lineup and then taken before a magistrate about 5:15 p. m., the appellant never made any statements, never made any confessions, or furnished any information to the officers. No incriminating acts or statements were made by the appellant between the time of his arrest and his appearance before the magistrate. No interrogation of the appellant by anyone is shown to have occurred between 1:30 p. m., and 5:15 p. m., December 28.

It is concluded that the facts and circumstances constitute sufficient probable

 

cause which reasonably tended to show that the appellant had committed the offenses of robbery and murder, and authorized his arrest and detention without a warrant.

The judgment was entered in this cause on September 25, 1966.

 The exclusory rule applicable to the confrontation of the accused to witnesses before trial for identification purposes without notice to and in the absence of counsel is not retroactive. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199, decided June 12, 1967.

The admission of the testimony of Gee and Jerry Eng as to the identity of the appellant was not error.

The judgment is affirmed.

ONION, J., not participating.