**David Leon WALLACE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 65325.**

Court of Criminal Appeals of Texas, En Banc.

July 1, 1981.

---

**68**

Michael R. Gibson, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. & R. Bradford Stiles, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for capital murder. The jury answered the punishment stage questions under Art. 37.-071, V.A.C.C.P., affirmatively, and punishment was assessed at death.

In one of his grounds of error appellant challenges the sufficiency of the evidence to prove that there is a probability he would commit criminal acts of violence that would constitute a continuing threat to society. Art. 37.071(b)(2), V.A.C.C.P. The evidence at the guilt stage of the trial was conflicting, but it was undisputed that appellant did not himself kill Lee Chagra, the murder victim. The State proved the killing by appellant's companion during the course of a robbery. Appellant testified Chagra was killed in self-defense during an argument that arose in a drug transaction.

On cross-examination appellant admitted that he had discussed possible robberies with the person who hired him in the instant case, but denied he had committed any. His confession admitted that he had

participated in a thwarted attempt to commit a robbery a few weeks before the instant murder. The only other evidence of misconduct was an admission by appellant during the punishment stage that he had a military violation for being absent from the place of duty.

■ There was no other evidence presented that could be considered relevant to the issue of future violent conduct. Specifically, there was no evidence of prior convictions, no prior acts of violence, no character evidence, no psychiatric evidence. Although the circumstances of the murder may be sufficient to support a death penalty, *Duffy v. State*, Tex.Cr.App., 567 S.W.2d 197, this is not such a case. We are of the opinion that the evidence is insufficient to support the "yes" finding on the issue of future violent conduct. Consequently the death penalty must be set aside. See *Sanne v. State*, Tex.Cr.App., 609 S.W.2d 762; *Brasfield v. State*, Tex.Cr.App., 600 S.W.2d 288; *Bullington v. Missouri*, —— U.S. ——, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981).

Because the evidence is insufficient to support a "yes" finding under Art. 37.-071(b)(2), supra, the judgment on punishment must be reformed to the only punishment available under the law, life imprisonment. V.T.C.A., Penal Code Sec. 12.31(a); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Bullington v. Missouri*, supra. The other ground of error based on the punishment stage now is moot. *Sanne v. State*, supra.

There remain four grounds of error addressed to the guilt stage that must be considered since if meritorious a reversal of the conviction would follow.

The first and fourth grounds of error complain of the jury charge on the law of parties and omission of a charge on self-defense.

■ In his challenge to the charge on the law of parties, appellant asserts it was error to overrule his objection to the charge for failure to apply the law of parties to the

facts of the case. From the facts of the case stated above, it is clear that appellant was guilty only as a party, not as a primary actor. Were there no application of the law of parties to the facts of the case, appellant's objection would be sound and the error reversible. *Apodaca v. State*, Tex.Cr. App., 589 S.W.2d 696. The charge, however, does include an application of the law of parties under V.T.C.A., Penal Code Sec. 7.02(b) to the facts of the case. Appellant complains because the court refused to apply the law of parties under Sec. 7.02(a)(2) to the facts. He relies on *Pitts v. State*, Tex.Cr.App., 569 S.W.2d 898, in which the trial court also applied the law of parties under Sec. 7.02(b) to the facts, but neglected to apply the law under Sec. 7.02(a)(2) to the facts. In that case, however, there was no objection. The court wrote:

"The appellant also complains that the law of parties was not applied to the facts of the case. Since this is not a fundamental error and since there was no objection to the court's charge nothing is presented for review. *Romo v. State*, 568 S.W.2d 298 (Tex.Cr.App.1978); *Mott v. State*, 543 S.W.2d 623 (Tex.Cr.App.1976). Moreover, the evidence supports and the charge authorizes the jury to find that the appellant himself shot the officer; there is no need to rely on the theory of parties to support the conviction. *Durham v. State*, 112 Tex.Cr.R. 395, 16 S.W.2d 1092 (1929); *McCuin v. State*, 505 S.W.2d 827 (Tex.Cr.App.1974)."

This holding, appellant argues, means there was no *fundamental* error, implying there would be error had there been an objection. We read this language to mean what it says: nothing was presented for review. Appellant having made proper objection, the issue is now presented for review, and on the facts of this case we hold there is no error. We paraphrase the alternative language from *Pitts* quoted above: the evidence supports and the charge authorizes the jury to find that the appellant was guilty under Sec. 7.02(b); there is no need to rely on the theory of parties under Sec. 7.02(a)(2) to support the conviction. The ground of error is overruled.

The ground of error complaining of denial of a charge on self-defense relies on evidence that the primary actor shot the deceased in an act of self-defense. While it is true that a party to an offense is entitled to a charge on self-defense if the primary actor would be entitled to one, *Misner v. State*, Tex.Cr.App., 610 S.W.2d 502, the requested charge in this case was not based on the law of parties. Nothing is presented for review.

In another ground of error appellant complains of denial of his motion for appointment of a psychiatrist and psychologist to determine his sanity for purposes of deciding whether to raise a defense of insanity. See Art. 46.03, Sec. 3, V.A.C.C.P. This request was contained in a motion that also requested appointment of a psychiatrist and clinical psychologist to determine appellant's competency to stand trial. See Art. 46.02, Sec. 3, V.A.C.C.P. The only order on this motion granted the request for examination on the matter of competency and made no reference to the matter of the insanity defense. It does not appear that appellant obtained an adverse ruling on the matter now raised. Nothing is presented for review.

Finally, appellant contends it was error to deny counsel's motion to withdraw. Counsel presented a motion to withdraw when it became apparent that a substantial portion of his fee would not be paid by appellant's mother, as he had been promised. Any contractual rights the attorney had against appellant's mother would be independent of his continuing duty to represent appellant once he had undertaken that responsibility. The right to counsel may not be manipulated so as to obstruct the judicial process or interfere with the administration of justice, *Estrada v. State*, Tex.Cr.App., 406 S.W.2d 448; *Rodriguez v. State*, Tex.Cr.App., 530 S.W.2d 944, and there is no suggestion that counsel in this case compromised himself in fulfilling his duty to appellant. The only suggestion appellant makes that he was in any way harmed by the circumstances relied on to support this ground of error is directed not to the denial of the motion to allow withdrawal of counsel, but to the inability of the defense to receive state funds for obtaining witnesses. The arguments are too speculative to show harm. Under Art. 26.05, V.A. C.C.P., counsel is entitled to reimbursement of investigation expenses only *after* they are incurred, and even then reimbursement is discretionary with the court, *Myre v. State*, Tex.Cr.App., 545 S.W.2d 820, 826; and refusal to pay expenses before they are incurred is not an abuse of discretion. *Eggleston v. State*, Tex.Cr.App., 422 S.W.2d 460. Although Art. 26.05, supra, by its terms applies only to appointed counsel, it has been held that the fact that counsel on *appeal* is retained does not bind counsel to furnish the appellate record at his own expense, and that the issue of indigency for obtaining a free record is not determined by the financial status of the defendant's family, nor by the fact that counsel is retained or the defendant has made bond. *Castillo v. State*, Tex.Cr.App., 595 S.W.2d 552; *Conrad v. State*, Tex.Cr.App., 537 S.W.2d 755. Likewise, it would be illogical to penalize the indigent defendant whose family hires a lawyer for him (and thereby relieves the State of its financial obligation in the matter) by denying him investigative funds under Art. 26.05, supra. Denial of counsel's motion to withdraw and failure to provide funds to prepare a defense before any expenses were incurred was not error. The ground of error is overruled.

The judgment, with punishment reformed to life, is affirmed.

TEAGUE, J., dissents.

ONION, Presiding Judge, concurring.

I concur in the result reached by the majority, but feel strongly compelled to state my reasons for doing so. I fully concur that the evidence was insufficient to support the jury's affirmative answer to the second special issue submitted to the jury (the future dangerousness question) under Article 37.071(b)(2), V.A.C.C.P., at the penalty stage of the trial.

Since any reversal in a capital murder case based on the insufficiency of the evidence to support any special issue submitted under Article 37.071, V.A.C.C.P., at the penalty stage of the proceeding is a precedent to be carefully considered as a guideline in future cases, I believe the facts should be more fully developed in the opinion than the majority does.

While the majority does correctly note that the requested charge on self-defense did not preserve error, the majority fails to demonstrate why, leaving the door open to a dissenting opinion by Judge Roberts claiming otherwise, in which Judge Clinton agrees in footnote # 7 of his opinion, concurring in part and dissenting in part. Here again, a fuller development of the facts in the opinion becomes important, as well as the facts surrounding the special requested charge. When these are considered, it adequately demonstrates why the dissenting opinion is without a solid foundation.

It is for these reasons that I write.

Turning to the facts, it is observed that this is an appeal from a capital murder conviction, where the jury returned affirmative answers to the special issues submitted at the penalty stage under Article 37.071, V.A.C.C.P., following which the court imposed the death penalty.

Appellant contends that the evidence was insufficient to support the jury's affirmative answer to the second special issue submitted under Article 37.071(b)(2), V.A.C.C.P., at the penalty stage of the trial.[1]

On Saturday afternoon, December 23, 1978, Attorney Lee A. Chagra was found shot and killed in his law office at 910 North Mesa Street in El Paso. The body was discovered by a law associate who called the police. The two-story building was in the process of being remodeled and contained a number of security devices.[2]

The body was found on the floor in Chagra's office. His boots were nearby and a cigarette was in his mouth. A bullet wound on the right side below the arm pit was observed. The office desk had been ransacked and the locks on the secretary's desk were bent. There were some empty vials found, and in a bedroom adjoining the office was discovered a small vial with a gold chain with a spoon. The vial was shown to contain cocaine. The living quarters adjoining the office contained three safes. One was in the bathroom, one in the fireplace in the living room, and another under the rug in the master bedroom.

Dr. Merton L. Howard, Jr., a pathologist, performed an autopsy and described the wound and the finding of a bullet in the chest cavity. The presence of cocaine was detected in Chagra's body.

The appellant was arrested in California in early March, 1979. On March 4, 1979, he gave an extrajudicial confession to Texas officers at Compton, California. The State introduced such confession and relied heavily upon it.

The then 20-year-old appellant stated in the confession he had been stationed at Ft. Bliss with the United States Army. In August 1978 he met a Lou Esper in the Playmate Bar in El Paso. They met on a number of occasions thereafter. On December 22, 1978, he met Esper again who talked to him about a robbery of Lee Chagra. Appellant refused to act alone and recruited a fellow soldier, Don White. On December 23, 1978, Esper gave him a .22 cal. revolver and a .32 cal. revolver from which the cylinder kept falling out because of a missing pin. Esper also furnished a car to him with New Mexico license plates and suggested the license plates be changed. He told the appellant to use the name "David Long" to obtain admittance to the Chagra building. The appellant's confes-

---

1. The second special issue submitted was "Do you find from the evidence beyond a reasonable doubt that there is a probability the Defendant would commit criminal acts of violence that would constitute a continuing threat to society?"

2. There were electrically controlled doors, closed circuit television and intercom speakers, etc.

sion relates he drove the car to the Army barracks where Don White placed Texas license plates on the car. White and the appellant then drove to Chagra's office obtained admittance from Chagra after telling him he (appellant) was "David Long" and White was his cousin and they wanted some information about a bill. White had the .22 cal. pistol and the appellant carried the .32 cal. revolver as White wanted a weapon that would work.

Appellant related in his confession they entered Chagra's office and pulled their weapons and demanded Chagra's money. Chagra stated he would give them what they wanted. He was told to hurry. As Chagra slowly lowered his hands, appellant stated that he heard a gunshot as White shot Chagra. Chagra fell to the floor. Appellant stated he pulled Chagra's boots off as Esper told him Chagra often carried $10,000.00 in cash in them. He found nothing. White found a ring of keys, and a search was made of the office. In a bedroom adjoining the office they found a suitcase full of money in $5,000.00 bundles. They took the suitcase, and White, according to the appellant, took the ring of keys, a tape recorder and a pair of handcuffs. They exited by the rear door where appellant stopped to wipe his fingerprints off the door knob. They drove to a motel and registered rather than going to Esper's apartment as instructed. Esper was called and went to the motel. The money totaled "around $150,000.00." Appellant related he got $20,000.00 and White got the same amount, if not more, and Esper kept the rest of the money. Esper took the weapons including the .38 cal. (snubnose) revolver which had been taken from Chagra. The car was parked at the Minx Theater in accordance with Esper's instructions. That evening appellant flew to California and did not return to El Paso until December 28, 1978. He stated he spent the $20,000.00 during that period. This was in essence the State's case.

In defense the appellant called some of the investigating officers who arrived on the scene shortly after the offense, as well as one of Chagra's secretaries and Chagra's brother, Joe, an attorney. The defense established that the deceased principally practiced criminal law, and often represented those that were charged with narcotic offenses. It was shown that the deceased used cocaine for his personal use, but was not a seller, and feared harassment from law enforcement officers, hence the security devices. There was testimony he gambled heavily in Las Vegas and elsewhere. His secretary testified the day before his death he had called from Tucson where he was in trial and instructed her to give $28,-000.00 to a woman who would appear in the office. He told her to take the money from a suitcase locked in a vanity of a bathroom of the apartment adjoining his office. She did so and estimated the balance remaining was approximately $200,000.00.

Taking the stand in his own defense, the appellant reiterated much of what was in his extrajudicial confession but repudiated the stated purpose of the visit. He testified that Esper had asked him and White to deliver 10 pounds of cocaine to Chagra and to collect for the same; that Esper was overseeing the delivery for a person unknown to the appellant.[3] He said Esper promised $5,000.00 for the delivery. He picked up the automobile from Esper and was told the "stuff" was in the trunk. When he and White obtained entrance to Chagra's office, the appellant related Chagra took the cocaine and went into an adjoining bedroom to check it out. He stated Chagra returned and said, "All right. What I want you to do is go back and tell the guy that sent you to come and get the money." An argument ensued. Finally Chagra grinned and laughed and said, "All right." Appellant believed Chagra then raised his hands and put a cigarette in his mouth and began to light it. He then saw Chagra reaching, and having been told Chagra was armed, appellant believed Chagra was reaching for a gun. He pulled

3. Appellant related Esper had described the person as having had a "run in" with Chagra and feared Chagra would try "to beat him," and asked Esper to arrange the delivery.

out his weapon and the cylinder fell out. Appellant then yelled to White and ran from the room as he heard a gunshot. White called for him to return, and when he did, he found Chagra on the floor. Appellant urged White to leave. White stated they had to get the dope or the money. Appellant admitted he took off Chagra's boots, while looking for money. White found the money in the bedroom and they left. His later activities were much the same as described in his confession.

Appellant related that before his arrest in California the woman with whom he had been living in El Paso had called him and told him some man had tried to run her off the road. And the night before his arrest, an unknown person called him at his mother's house and told him that White had been "busted" and warned him that something would happen to him or members of his family if he revealed that Chagra's death had been connected with the delivery of cocaine. He stated he was placed in fear and for this reason told the officers in his confession that the motive in visiting Chagra's office was robbery.

On cross-examination appellant admitted discussing possible robberies with Esper including one of Esper's nephews, but he denied he was involved in any offense urged by Esper other than the Chagra affair. Upon denial, he was sought to be impeached by that part of his confession not previously read to the jury wherein he stated that at the urging of Esper he and a Robert Parren, four weeks before the Chagra killing, attempted a robbery at a home next door to Lee Chagra's home. Someone at the card game was to leave the door open, but didn't and the attempt was unsuccessful. Appellant said he knew of that attempt by Parren and a man named Charles, but stated he was not involved. He testified he told the officers about the incident in order to make his statement that robbery was the motive of the Chagra affair more believable as he feared retaliation if he mentioned a delivery of narcotics.

4. This appears to be a military non-judicial determination of punishment which was suspended.

At the penalty stage of the trial the State offered no evidence. The appellant, 20 years old at the time of the alleged offense, was recalled and testified he entered the Army immediately after leaving high school; that the only offense on his record was an Article 15 violation for being absent from the place of duty. The punishment was suspended.[4] He related when he went to Chagra's office he did not anticipate what would occur and the result thereof. He expressed remorse about what happened. He testified he did not shoot Chagra and did not believe White's action was deliberate as White was just as scared as he was. Appellant testified he had not been away from home very much prior to entering the Army, and when he got to El Paso he "ran into the wrong people," including Esper, whose criminal record he learned of after the alleged offense.

The State offered no evidence of aggravating circumstances but relied, apparently, upon the facts developed at the guilt stage of the bifurcated trial. The appellant offered the mitigating circumstances as mentioned above. There were no reputation witnesses offered by either side, no psychiatric testimony as to appellant's psychiatric make-up, no testimony from appellant's Army companions or his jailors, etc.

It was the State's theory that Chagra was killed by co-defendant White while he and the appellant were in the course of a robbery. It is established that a defendant can be convicted of capital murder despite the fact it was defendant's co-defendant who killed the deceased during the robbery. *Smith v. State*, 540 S.W.2d 693 (Tex.Cr.App. 1976); *Livingston v. State*, 542 S.W.2d 655, 660 (Tex.Cr.App.1976). It is not, however, appellant's contention that the evidence was insufficient to sustain a conviction for murder, but only that the evidence is insufficient to support the jury's answer to special issue number two submitted at the penalty stage of the trial.

It is clear that in answering the special issues under Article 37.071, V.A.C.C.P., the jury may consider all of the evidence adduced at the guilt stage of the trial. *Duffy v. State*, 567 S.W.2d 197 (Tex.Cr.App.1978); *Felder v. State*, 564 S.W.2d 776 (Tex.Cr. App.1978); *Brock v. State*, 556 S.W.2d 309 (Tex.Cr.App.1977); *Burns v. State*, 556 S.W.2d 270 (Tex.Cr.App.1977); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976). Indeed the circumstances of the offense and the facts surrounding it may furnish greater probative evidence than any other evidence regarding the second special issue submitted at the penalty stage of a capital murder case. *Duffy v. State*, supra, and cases there cited.

Despite the brutal facts of the instant case, did the State sustain its burden of proof beyond a reasonable doubt that there was a probability that the appellant would commit criminal acts of violence that would constitute a continuing threat to society? See Article 37.071(b)(2), V.A.C.C.P. There was no showing of a prior criminal record, or prior acts of violence on the part of the appellant. The State offered no evidence at all at the penalty stage of the trial and relied solely upon the facts at the guilt stage of the trial. These facts, despite appellant's active participation, did not show that appellant shot and killed the deceased. There was no other evidence to show the appellant was violent while in the Army or while in jail after his arrest, etc.

As we stated in *Warren v. State*, 562 S.W.2d 474 (Tex.Cr.App.1978):

"While there may be cases where the evidence offered at the guilt stage of the trial may be sufficient to support an affirmative finding to special issue No. 2 under Article 37.071, we conclude under the circumstances of the instant case that the evidence is insufficient to sustain the jury's affirmative finding as to special issue No. 2—that the appellant would commit criminal acts of violence that would be a continuing threat to society." (Footnote omitted.)

I would conclude the same is here true, and would concur with the majority that the evidence is insufficient to support the affirmative finding of the jury as to special issue No. 2.

The evidence being insufficient to support the assessment of the death penalty, death is no longer an available penalty. *Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr. App.1980); *Bullington v. Missouri*, —— U.S. ——, 101 S.Ct. 1852, 68 L.Ed.2d 1270 (1981); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). In a capital murder case where the evidence is insufficient to support the death penalty assessed, the reviewing court, before deciding on the proper disposition of the appeal, must determine if the guilt stage is free from reversible error. If the guilt stage is not free of such error, the cause must be reversed for such error, and upon any retrial the death penalty would not be an available penalty. If the guilt stage of the trial is free of reversible error, then the question remains as to the proper disposition of the cause where the only error is at the penalty stage of the trial, to-wit: the insufficiency of the evidence to support one of the special issues under Article 37.071, supra, or where life imprisonment has been assessed as punishment rather than the death penalty. This is so in light of the changes brought about by *Brasfield v. State*, supra; *Bullington v. Missouri*, supra; *Burks v. United States*, supra; *Greene v. Massey*, supra.

Normally, in the past if the bifurcated trial was before a jury and an error occurred at the penalty stage of the trial the defendant was entitled to an entirely new trial because this court was without authorization to direct a new trial before a different jury on the issue of punishment alone. *Daniel v. State*, 585 S.W.2d 688 (Tex.Cr.App.1979); *Bullard v. State*, 548 S.W.2d 13, 18 (Tex.Cr.App.1977); *Ex parte Flores*, 537 S.W.2d 458 (Tex.Cr.App.1976); *Ex parte Olvera*, 489 S.W.2d 586 (Tex.Cr. App.1973); *Ellison v. State*, 432 S.W.2d 955 (Tex.Cr.App.1968).

Article 37.07, § 3(c), V.A.C.C.P., provides:

"In cases where the matter of punishment is referred to the jury, the verdict shall not be complete until the jury has rendered a verdict both on the guilt or innocence of the defendant and the amount of punishment where the jury finds the defendant guilty. In the event the jury shall fail to agree, a mistrial shall be declared, the jury shall be discharged, and no jeopardy shall attach."

In *Eads v. State*, 598 S.W.2d 304, 308 (Tex.Cr.App.1980), it was written:

"It has been said under § 3(c) that where the jury has been selected to assess punishment and fails to agree on a penalty a mistrial should be declared as to the entire trial. *Bullard v. State*, 548 S.W.2d 13, 18 (Tex.Cr.App.1977); *Galloway v. State*, 420 S.W.2d 721 (Tex.Cr.App.1967); *Longs v. State*, 429 S.W.2d 157 (Tex.Cr. App.1968); *Brumfield v. State*, 445 S.W.2d 732 (Tex.Cr.App.1969). And if on appeal it is determined that reversible error occurred at the penalty stage of the trial before a jury, this court is without authority to direct a new trial or penalty hearing before a different jury on the issue of punishment alone. *Bullard v. State*, supra, and cases there cited. See also *Ellison v. State*, supra." [5]

It has been held that Article 37.07, V.A.C. C.P., applies to the trial of capital murder cases where the procedure is not in conflict with Article 37.071, V.A.C.C.P. *Eads v. State*, 598 S.W.2d 304, 308 (Tex.Cr.App. 1980).

By its very terms, Article 37.07, supra, applies to all criminal cases, §§ 2(a), (b) and 3, and is applicable to the trial of capital murder cases where the procedure is not in conflict with Article 37.071, supra. *Eads v. State*, 598 S.W.2d 304, 308 (Tex.Cr.App. 1980).

In *Warren v. State*, 562 S.W.2d 474 (Tex. Cr.App.1978), this court found the evidence insufficient in a capital murder case to sustain the affirmative finding to special issue No. 2 under Article 37.071, supra, and reversed and remanded. While the court did not discuss the rules discussed above, they were applied. This case was decided, of course, before the decisions of the United States Supreme Court in *Burks v. United States*, supra, and *Greene v. Massey*, supra.

In *Eads v. State*, supra, where the verdict was not complete at the penalty stage of a capital murder trial, the jury having answered only special issue No. 3 and having failed to answer special issue Nos. 1 and 2, it was held the trial judge was without authority to complete the verdict or substitute his own finding and assess life imprisonment. The case was reversed for an entirely new trial.

It is clear then that the rules discussed above have been applied in both non-capital cases as well as capital murder cases, and where the only error occurred at the penalty stage of the trial, the defendant was entitled to an entirely new trial.

In *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), it was held that the Double Jeopardy Clause of the Fifth Amendment precludes a second trial following a reversal of conviction where the reviewing court has found the evidence insufficient to sustain the jury's verdict of guilt.[6]

In *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), the rule of *Burks v. United States*, supra, was made applicable to state criminal proceedings. See *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). In *Greene v. Massey*, supra, it was held that a state may not retry a defendant after his conviction has

---

**5.** In *Brumfield v. State*, supra, it was stated:

"If, however, an error occurs at the punishment hearing before the judge the case on appeal may be remanded to the trial court for the proper assessment of punishment by the judge. *Johnson v. State*, Tex.Cr.App., 436 S.W.2d 906; *Baker v. State*, Tex.Cr.App., 437 S.W.2d 825. Cf. *People v. Taylor*, 155 Cal. App.2d 26, 317 P.2d 167."

See also *Miller v. State*, 472 S.W.2d 269 (Tex. Cr.App.1971); *Wheat v. State*, 442 S.W.2d 363 (Tex.Cr.App.1969); *Ocker v. State*, 477 S.W.2d 288 (Tex.Cr.App.1972).

**6.** The Court was careful to distinguish a reversal based on the sufficiency of the evidence from a reversal based on trial error.

been reversed by an appellate court on the ground that evidence introduced at prior trial was insufficient, as a matter of law, to sustain the jury's verdict.

In *Brasfield v. State*, 600 S.W.2d 288, 298 (Tex.Cr.App.1980), it was held that where the evidence was insufficient to sustain the jury's finding as to special issue No. 2 in a capital murder case the defendant could not be assessed the death penalty in any retrial. *Burks* and *Greene* were cited as authority. There were, however, other errors at the guilt stage of the bifurcated trial so the cause was reversed and remanded. See and cf. *Sanne v. State*, 609 S.W.2d 762, 766–767 (Tex.Cr.App.1980).

*Bullington v. Missouri*, —— U.S. ——, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), confirmed the rationale and result of *Brasfield*. There it was held that under Missouri's bifurcated trial procedure in capital murder the Double Jeopardy Clause of the Fifth Amendment forbids a state from seeking the death penalty at the retrial of a defendant, whose first jury, following a sentencing proceeding that effectively amounted to a "trial" on the issue of punishment declined to impose that punishment and assessed life imprisonment. The rationale of *Burks v. United States*, supra, was utilized by the Supreme Court.

It is observed that Missouri's bifurcated trial procedure is somewhat similar to ours in capital murder cases.

There can be no question that where the jury in a capital murder case answers the special issues so as to result in a life sentence, or where, as in the instant case, the evidence is insufficient to support an affirmative finding to one of the special issues under Article 37.071, supra, and there is reversible error at the guilt stage of the trial the defendant upon any retrial could not be assessed any greater penalty than life imprisonment, the death penalty being no longer a viable punishment. See and cf. V.T.C.A., Penal Code, § 12.31.

Where, however, there is no reversible error at the guilt stage of the trial, what procedure is to be followed? Since the error was at the penalty stage, is the defendant entitled to an entirely new trial under the rules discussed earlier? Under the impact of *Burks* and *Greene* as interpreted in *Brasfield* and *Bullington*, life imprisonment is the only available penalty. A defendant could not be afforded an entirely new trial. If there was a new trial and the court again conducted another error-free guilt stage, the jury at the penalty stage of the capital murder trial could not be permitted to answer the special issues required by Article 37.071, supra, as the only penalty available would be life on retrial. The court would have to terminate the penalty phase of the trial and assess the penalty of life imprisonment as a matter of law. There thus would be no penalty stage of the trial upon any retrial.

In the instant case we are confronted with an error-free guilt stage of the trial with life being the only possible punishment under the circumstances as a matter of law. It would be absurd to remand for an entirely new trial when the same could not be afforded. The law does not require that which is useless to be done. Thus, an exception is created in capital murder cases to the rule that if the error is at the penalty stage of a trial conducted before a jury the defendant is entitled to an entirely new trial.

The guilt stage of the trial in the instant case being free of reversible error and the only possible punishment being life imprisonment after setting aside the verdict at the penalty stage of the trial, it is my opinion that this court should impose life imprisonment since that penalty is affixed by law under the circumstances and affirm the judgment subject to the proper sentence being subsequently imposed by the trial court.

I concur with the majority that any error for failure to charge on the law of self-defense based on evidence that the non-testifying co-defendant White shot the deceased in self-defense was not properly preserved. In view of the assertions in the dissenting opinion by Judge Roberts with which Judge Clinton agrees, I feel compelled to say more than the majority does.

The ground of error reads:

"The court erred in failing to grant defendant's special requested jury instruction on self-defense since this issue was raised by the testimony."

The special requested instructions read:

"It is a defense to this prosecution if the Defendant's conduct was justified by law. A person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. Reasonable belief means a belief would be held by an ordinary and prudent person in the same circumstances as the Defendant. Therefore, even if you believe from the evidence beyond a reasonable doubt that the Defendant David Leon Wallace, as alleged,[7] but you further believe, or you have a reasonable doubt thereof, that, at the time and place in question, *the Defendant reasonably believed* that Lee A. Chagra was using or attempting to use unlawfuly (sic) force against him and that use of force and degree of force were immediately necessary *to protect himself* against Lee A. Chagra's use or attempted use or (sic) force, you will find the Defendant not guilty." (Emphasis supplied.)

This is the requested charge the court refused to give, and the only charge on self-defense requested. The court was correct as the evidence did not raise the issue of self-defense on the part of the appellant. Buried in appellant's argument under the above stated ground of error is the theory that since he was convicted upon a theory of vicarious liability that consideration should be given to whether the co-defendant White acted in self-defense. Appellant acknowledges White did not testify, but contends the evidence was sufficient to infer White's reasonable belief he acted in self-defense. Even if this argument could be accepted, this is not the charge requested. Not having requested such a charge at

the time of trial, see Article 36.14, and 36.15, V.A.C.C.P., the appellant is in no condition to complain on appeal.

The fact that appellant's counsel orally stated that the charge "be keyed ... with the instructions of parties" was certainly not enough to call the court's attention to the fact that appellant wanted a charge on self-defense different than the one requested. To hold otherwise would allow the trial court to be "sandbagged." See *Seefurth v. State*, 422 S.W.2d 931, 936 (Tex.Cr.App. 1967). *Austin v. State*, 541 S.W.2d 162, 166 (Tex.Cr.App.1976), cited by the dissent, is a far cry from the instant case. There the special requested charge on an affirmative defense supported by the evidence was correct except that the requested charge misplaced the burden of proof. The court held the requested charge called the court's attention to the affirmative defense and a correct instruction should have been given. *Austin* is not here controlling.

For the reasons stated, I concur.

CLINTON, Judge, concurring in part and dissenting in part.

This is one of several death penalty cases submitted on rehearing in which is raised a common troublesome question: Where cause for reversal is found, what is the proper disposition of the judgment of the trial court? In this case the opinion for the court concludes:

"... We are of the opinion that the evidence is insufficient to support the 'yes' finding on the issue of future violent conduct. Consequently the death penalty must be set aside. See *Sanne v. State*, [Tex.Cr.App.] 609 S.W.2d 762; *Brasfield v. State*, [Tex.Cr.App.] 600 S.W.2d 288; *Bullington v. Missouri*, —— U.S. ——, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981)."

In *Brasfield v. State*, supra, having found the evidence insufficient to support the affirmative answer to the second issue, we set it aside and consequently entered "a judgment setting aside the penalty assessed by

---

7. It appears that something was here omitted, but an examination of the oral objection later reduced to writing in accordance with Article

36.14, V.A.C.C.P., contains the same apparent omission.

the jury as embodied in the judgment," declaring, therefore, that appellant may not again be tried for the capital murder alleged "wherein the State seeks the death penalty." By citing *Burks v. United States* and *Greene v. Massey,* supra, the clear understanding conveyed by the Court is that constitutional principles of jeopardy mandated that result, and *Bullington v. Missouri,* —— U.S. ——, 101 S.Ct. 1852, 68 L.Ed.2d 270, just now confirms that both rationale and result are right. The cause was reversed and remanded, however, because we have sustained two other grounds of error that implicated the process of trial on guilt-innocence. *Brasfield,* supra, at 298.[1]

More recently in *Sanne v. State,* 609 S.W.2d 762, 766–767 (Tex.Cr.App.1980) the Court followed the *Brasfield* format, holding that "having received a favorable answer to the second punishment issue in his first trial, appellant Sanne should not have been subjected to the risk of receiving the penalty of death upon his retrial following reversal of his first conviction,[2] and that his punishment must be reformed from death to life." Nevertheless, the Court proceeded to consider "the other grounds of error addressed to the guilt stage" of the trial; unlike *Brasfield,* however, Sanne's grounds of error were found meritless. The judgment in his case, "reformed to punishment

by confinement for life," was therefore affirmed, *Sanne v. State,* supra, at 777.

In the case at bar, though the death penalty is set aside for insufficient evidence to support an affirmative answer to the second question, the Court correctly addresses other grounds of error assailing asserted "trial errors" during the guilty stage, rather than immediately to reform the judgment and affirm it, and thereby obviate a new trial. This action comports with *Brasfield* and *Sanne,* and whatever justification is believed to warrant departure from their format is not suggested elsewhere.

However, the resultant reversals and remands presently ordered by the Court when a death dealing verdict has been returned by a jury some of whose members were selected in violation of *Witherspoon* gloss given V.T.C.A. Penal Code, § 12.31(b) by *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) are inapposite, although there is in them the kernel of a theory that a *Witherspoon* error affects only the issue of punishment. Yet, the remands in such cases as *Grijalva v. State,* 614 S.W.2d 420 (Tex.Cr.App.1980); *Loudres v. State,* 614 S.W.2d 407 (Tex.Cr.App.1980); *Pierson v. State,* 614 S.W.2d 102 (Tex.Cr.App.1981) were correctly ordered, for reasons that are summarized in the margin.[3]

1. In *Brasfield* the Court, as is its wont when the issue is raised, first reviewed sufficiency of the evidence to sustain the finding of guilt and, finding it supportive, moved on to other evidentiary issues on punishment. Concluding that an affirmative answer to special issue one was supported by the evidence, but that the affirmative answer to the second issue had not been, and noting the latter holding "affects only the death penalty," we returned to asserted pretrial and trial errors. After sustaining grounds of errors complaining of overruling a motion to quash the indictment, the Court did point out, at 295, its ruling in that respect "raises a question of proper disposition of the cause in its present posture," but on the stated assumption that the cause would be retried on an amended indictment we went on to consider the remaining grounds of error. Still, this does not mean that in every case all nonevidentiary grounds of error must be reviewed. See *Fearance v. State,* 616 S.W.2d 207 (Tex.Cr.App.1981).

2. The earlier convictions had been reversed in *Skillern v. State,* 559 S.W.2d 828 (Tex.Cr.App. 1977) for the error committed in permitting the jurors to separate after the charge of the court on guilt-innocence had been read to the jury—so-called "trial error," by which constitutional principles of jeopardy are not implicated. See *Burks v. United States,* supra, 437 U.S. at 15–16, 98 S.Ct. at 2149–2150; *Greene v. Massey,* supra, 437 U.S. at 26, 98 S.Ct. at 2155.

3. Essentially the reasoning is, as stated in *Grijalva,* though a *Witherspoon* error taints only the death penalty, "it is not such error as would preclude the State from seeking the death penalty on a retrial" and, therefore, the Court may not reform the punishment to life and affirm that judgment. Underlying the latter statement is the statutorily prescribed scheme of the intimate interrelationship between a verdict, Articles 37.01 and 37.07, § 3(c), V.A.C.C.P., a judgment based on the verdict rendered, Articles 37.12 and 42.01, *id.,*

Still, those reasons will not resolve the quite different problem presented in the case at bar.

Unlike a finding that evidence is legally insufficient, *Witherspoon* errors do not call into play the jeopardy prohibitions of the Fifth Amendment to the Constitution of the United States and of Article I, Section 14 of our Bill of Rights. From the *Burks-Greene* tandem it is clear that a finding of insufficient evidence to support a judgment of conviction dictates a judgment of acquittal, thereby precluding a second trial. This is a "constitutionally mandated exception" to the settled rule in this State that "no court can alter a discharged jury's verdict," *Ramirez v. State*, 587 S.W.2d 144, 147 n. 2 (Tex.Cr.App.1979). Where, as here, the exception applies, *Brasfield v. State*, supra, and there are no other grounds of error that invalidate the verdict of guilt, we

should reform the judgment to reflect the only available punishment provided for the offense of capital murder[4] of which an accused has been flawlessly convicted. Surely the Court is empowered to do so and, having reformed the judgment, is likewise authorized to reform the sentence to conform to the judgment. Article 44.24(b), V.A.C.C.P., *Vasquez v. State*, 477 S.W.2d 629, 635 (Tex.Cr.App.1972).[5]

Accordingly, while agreeing that insufficiency of the evidence requires that the punishment verdict be set aside,[6] because the majority has rejected what is seen as trial error, I dissent to the action of the Court affirming the reformed judgment.[7]

ROBERTS, Judge, dissenting.

In *Bullington v. Missouri*, —— U.S. ——, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the

and the sentence pronouncing the judgment and ordering it executed, Article 42.02, *id.* See *Bessett v. State*, 78 Tex.Cr.R. 110, 180 S.W. 249 at 250 ff (1915) (Davidson dissenting); *Pritchard v. State*, 117 Tex.Cr.R. 106, 35 S.W.2d 717 (1931); *Wooten v. State*, 111 Tex.Cr.R. 524, 15 S.W.2d 635 (1929); *Johnson v. State*, 125 Tex. Cr.R. 147, 67 S.W.2d 295, 296 (1934); *Moore v. State*, 83 Tex.Cr.R. 302, 203 S.W. 51 (1918); *Williams v. State*, 118 Tex.Cr.R. 366, 42 S.W.2d 441 (1931); *Chaney v. State*, 133 Tex.Cr.R. 517, 112 S.W.2d 464 (1938). Thus, because a jury selected in violation of *Witherspoon* may not, as a matter of constitutional law, return a verdict which will result in assessment of the death penalty and, therefore, is without authority to render "special verdicts" of "yes" to issues submitted pursuant to Article 37.071(b), any judgment purportedly based on such an invalid verdict is likewise fatally defective and may not be "reformed" into an assessment of punishment at life imprisonment. See *Smith v. State*, 479 S.W.2d 680 (Tex.Cr.App.1972): "The verdict having been received by the court and entered of record, the court in its judgment and sentence was not entitled to change the verdict of the jury."

4. Article 37.071(a), V.A.C.C.P., provides that when the defendant has been found guilty of a capital offense, "the court shall conduct a separate sentencing [sic] proceeding to determine whether the defendant shall be sentenced to death *or life imprisonment*. [Emphasis added]." Section (e) directs that upon a negative finding on any submitted issue, "the Court *shall* sentence the defendant to confinement in the Texas Department of Corrections for life. [Emphasis added]." Capital murder is, of

course, a capital felony, V.T.C.A. Penal Code, § 19.03(b), the prescribed punishment for which is confinement for life or death, *d.*, § 12.31(a). That the Court did not follow this procedure in *Warren v. State*, 562 S.W.2d 474 (Tex.Cr.App.1978) is no doubt because *Burks* and *Greene* had not then been decided.

5. Such a disposition may well be dictated by the policy considerations underlying the jeopardy doctrine: Even though his life is no longer in jeopardy, "principles of fairness and finality" would seem also to require that appellant not be subjected to another ordeal of trial for the same offense. See *United States v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975). In any event, that the *constitutional* jeopardy doctrine precludes the State from again seeking the death penalty is what distinguishes that which we should do here from the remand required by the *procedural* scheme of Texas law upon the sole finding of a *Witherspoon-Adams* error in such cases as *Grijalva*, *Loudres* and *Pierson* [see n. 4, *ante*].

6. Just now enacted by the Legislature, House Bill No. 1164 purports to direct that when an affirmative answer to any special issue on punishment is found to be without sufficient evidentiary support, and the prosecutor requests it, the "sentence" of the trial court shall be reformed to punishment at confinement for life.

7. In this respect I agree with that part of the Dissenting Opinion by Judge Roberts which examines them and finds error in failing to give a charge on self-defense.

Supreme Court held that a defendant, who was given a punishment of life imprisonment by the jury at his first trial on capital charges, was protected by the Double Jeopardy and Due Process Clauses from exposure to the death penalty at the retrial.[1] Because of this effect on a retrial, a challenge to the sufficiency of the punishment evidence must be considered in an appeal from a capital case. *Cf. Rains v. State*, 604 S.W.2d 118, 120 (Tex.Cr.App.1980) (sufficiency of evidence must be considered even when trial error is found, because of different effect on retrial).[2]

I agree that the evidence was insufficient to support the jury's verdict on special issue (2). I also agree that, if there were no reversible trial error, the judgment should be reformed to confinement for life and affirmed.

But in this case there was reversible trial error. The appellant was entitled to a charge on self-defense under the law of parties, but he was denied it. The court passes over the error by holding that it was not preserved.

The appellant "object[ed] to the charge in that it fails to include a submission of the issue of self-defense to the jury." He also presented a special requested charge, which was imperfect in that it referred to what "the Defendant reasonably believed" rather than to White's reasonable belief. But the appellant also asked that the charge "be keyed ... with the instructions of parties." Although a specially requested charge may be defective, it still may serve to call the court's attention to the need to charge on a defensive issue. *Austin v. State*, 541 S.W.2d 162, 166 (Tex.Cr.App.1976). The objection and the special requested charge were sufficient to preserve the error.

Since the conviction should be reversed for the failure to charge on self-defense, I dissent from the affirmance.

---

1. In *Horne v. State*, 607 S.W.2d 556, 561, 564 n. 7 (Tex.Cr.App.1980) (concurring opinion), I suggested that this result could be reached in *Bullington* while recognizing a substantive difference between issues of historical fact and issues of future conduct. This could have required a different application of the Double Jeopardy Clause to special issue (2) of Tex. Code Crim.Proc. art. 37.071(b), which is an issue of future conduct, than to all the other issues in the trial, which are issues of historical fact. Similar substantive distinctions were urged by the dissenters in *Bullington*, but the court based its decision entirely on the procedural similarities between the punishment stage of a capital trial and the trial on guilt or innocence. Since these procedural similarities obtain for all three special issues under article 37.071(b), the distinction that I proposed in my *Horne* opinion cannot be maintained in light of *Bullington*. To me and others that light may be "wholly unpersuasive," —— U.S. at ——, 101 S.Ct. at 1856 (Powell, J., dissenting), but it is controlling.

2. It would also follow that the court must consider a challenge to the sufficiency of the evidence to prove that a defendant "has previously been finally convicted of two felony offenses," etc.; Tex.Penal Code sec. 12.42(d). All the procedural hallmarks of the trial on guilt or innocence that underlie the decision in *Bullington v. Missouri*, —— U.S. ——, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), are present when the jury decides whether a defendant is an habitual felony offender. There is a separate proceeding, a requirement of proof of additional facts beyond a reasonable doubt, an explicit standard to guide the jury, and a choice of only two alternatives. The procedural basis of *Bullington* makes this court's decision in *Porier v. State*, 591 S.W.2d 482 (Tex.Cr.App.1979) (Double Jeopardy Clause does not prevent retrial of enhancement allegations after appellate reversal for insufficiency of evidence), appear even more plainly wrong than I said it was on substantive grounds in *Horne v. State*, 607 S.W.2d 556, 561, 563 n. 4 (Tex.Cr.App.1980) (concurring opinion).