*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



## MEMORANDUM OPINION

No. 04-11-00692-CR

Rene **CASTORENO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR1044A
Honorable Melisa Skinner, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:        Sandee Bryan Marion, Justice
              Rebecca Simmons, Justice
              Marialyn Barnard, Justice

Delivered and Filed: May 9, 2012

AFFIRMED

A jury found appellant, Rene Castoreno, guilty of the capital murder of Manuel Barrera. The State did not seek the death penalty, and the trial court assessed punishment at life imprisonment. We affirm.

## BACKGROUND

On the evening of October 10, 2008, Diana Barrera, her husband, Manuel Barrera, and her mother, Herminia Castaneda, were leaving a Veterans of Foreign Wars hall ("VFW"). Diane

testified that Manuel walked her to their car, and then walked Castaneda to her car.  Castaneda testified that as she was about to get in her car, a van stopped behind the car and a man got out of the van and demanded her purse.  Castaneda stated that she threw her purse to the side and that Manuel started walking toward the van, at which time a second man, inside the van pulled out a gun and shot Manuel.  Castaneda said she then drove her car to the back of the VFW hall, got out of the car, and ran inside.  She testified that as she was running to the door of the VFW hall, she heard two gun shots fired at her.  After the van left, she returned to the parking lot and saw that Manuel was dead.  Castaneda testified she told the investigating detective that the vehicle was a mini-van—light blue or light green in color—with three people inside.  She could not identify any of the men and provided no other descriptive details to the police.

Additionally, testimony by Tracy Elizalde established that, prior to the shooting at the VFW, she and her boyfriend, Michael Morales, left a restaurant and walked back to their car.  The car was parked about two blocks from the restaurant on a dark street.  Elizalde testified that as she and Morales stopped to talk for a short while at the passenger side of their car, a van pulled up behind them.  She said that two men got out of the side door of the van and that one of them, later identified as appellant, pointed a gun at her and Morales.  According to Elizalde, appellant demanded her and Morales's belongings.  The other man grabbed her purse and necklace and took Morales's wallet.  Elizalde stated that the unarmed man then demanded Morales's watch, but because Morales did not give it to him right away, appellant put the gun to her head and threatened to shoot her if Morales did not give him the watch.  Elizalde testified Morales complied and gave him the watch.  The men then returned to the van and started to drive away.  Morales testified to the same events.  Elizalde got the license plate number of the van before it drove off.  After the van left, Elizalde called the police and gave them the license plate

number. She stated that, several weeks later, she went to the police station and identified the two men, along with the driver of the vehicle, based on photographs.

Prior to both incidents, testimony established that Daniel Norriega parked his van at a restaurant and that it was the last time he saw his van that evening. Norriega was robbed and the van was stolen by three men. Early the next morning, the van was discovered in a park after it was set on fire. The van's license plate number matched the number given to police by Elizalde. Detective Tim Angell, the officer who investigated Barrera's murder, also believed it was the same van involved in the VFW shooting. Latent fingerprint analysis was performed on the van and prints belonging to Brijido Munoz were discovered. Detective Angell testified that after speaking with Norriega, he learned that Norriega did not know Munoz. Detective Angell stated that he then made contact with Munoz. He also testified that after further investigation, three arrest warrants were issued for appellant, Munoz, and Edgar Velasquez for the capital murder of Manuel Barrera.

## EXTRANEOUS OFFENSE EVIDENCE

In his first issue on appeal, appellant complains the trial court abused its discretion when it admitted evidence that appellant had committed two aggravated robberies before committing the capital murder of Barrera. Generally, extraneous offense evidence is not admissible at the guilt-innocence phase of a trial to prove that a defendant committed the charged offense in conformity with his bad character. TEX. R. EVID. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). However, this evidence may be admissible when it has relevance apart from its character conformity. *Devoe*, 354 S.W.3d at 469. "For example, it may be admissible to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Whether it has relevance apart from its character conformity is a

question for the trial court. *Id.* However, even if the evidence is relevant apart from its character conformity, it still may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); *see also* TEX. R. EVID. 403.

A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse of discretion standard. *Devoe*, 354 S.W.3d at 469. As long as the ruling of the trial court is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *Id.* A trial court's ruling admitting 404(b) evidence is generally within the zone if there is evidence supporting that an extraneous offense is not relevant to a defendant's character trait. *Id.* If the evidentiary ruling of the trial court is correct on any theory of liability applicable to that ruling, it will not be disturbed. *Id.*

Here, the trial court's charge instructed the jury that appellant could be found guilty of the offense of capital murder as a party. *See* TEX. PENAL CODE ANN. § 7.02(b) (West 2003). Thus, the State was required to prove that appellant entered into a conspiracy to commit the felony of robbery, and while in the course of committing or attempting to commit the robbery, appellant, along with Munoz and/or Velasquez, intentionally caused Barrera's death in furtherance of the unlawful purpose to commit robbery and that the offense of capital murder should have been anticipated as a result of carrying out the conspiracy. *See id.*

At trial, the State put on evidence outside the presence of the jury that a carjacking involving Norriega's van, and two other aggravated robberies, one of which involved Elizalde and Morales, had occurred within one hour of Barrera's murder. All of the incidents involved a mini-van fitting the same description as that involved in the capital murder. During this testimony, appellant was identified by Elizalde as the robber with the gun. Additionally,

Norriega described his carjacking and the State presented evidence that a fingerprint matching one of the co-defendants was found on the burned van.

After appellant objected to the jury hearing this evidence, the State argued the extraneous offenses were relevant and connected appellant to the capital murder because the evidence "would show the jury [appellant's] role as a party, his intent, his planned preparation, and the identity of these actors as the ones that committed this offense." The State also asserted that the jury was entitled to know why the van became a suspect vehicle.

The trial court, however, determined that "each and everyone of these robberies" prior to the capital murder were "separate and distinct." Still, the trial court allowed the following limited testimony concerning these events stating:

> under 404, and because the State has indicated that [they] are proceeding under a parties theory . . . the robbery of Tracy Elizalde shows knowledge under 404 that the defendant, if he is not the gunman, should have anticipated the taking of a human life. And given the fact that he was actually the gunman in that case and identified as such . . . I find that to be [a] compelling reason under 404 to allow that aggravated robbery or the testimony of Ms. Elizalde into evidence.
>
> Mr. Norriega may testify that he did not give permission for these individuals to have the vehicle. But he may not testify to the facts of the aggravated robbery. He may testify to and identify the vehicle. Ms. Elizalde may testify to the facts of the aggravated robbery as I stated under 404, but the rest of the evidence is not admissible.

The trial court also conducted a balancing test under Rule 403 and found that allowing evidence of Elizalde's and Morales's aggravated robbery was "very compelling evidence that the defendant should have anticipated the taking of human life" and that it is "more probative than it is prejudicial in this particular case." No evidence concerning the details of Norriega's robbery was allowed. The trial court also gave a limiting instruction in the jury's charge that read: "you cannot consider [this] testimony for any purpose unless you find and believe beyond a reasonable

doubt that the defendant committed the other offenses . . . and even then you may only consider the same in determining the intent and knowledge of the defendant . . . ."

Because neither Casteneda nor Diana Barrera were able to provide any descriptive details to the investigating officer about the shooting of Manuel other than a description of the van, we believe the extraneous offense evidence was necessary to show appellant's intent to commit capital murder as well as his preparation and identity. *See Rubio v. State*, 607 S.W.2d 498, 500–01 (Tex. Crim. App. 1980) ("This Court has consistently held that when a defendant raises a defensive theory of lack of intent to wrongfully engage in criminal conduct, an extraneous offense is admissible by way of rebuttal on the issue of intent.").

Turning to the question of whether the probative value of the testimony concerning the aggravated robbery was substantially outweighed by the danger of unfair prejudice, we note that appellate courts should afford deference to a trial court's Rule 403 balancing determination and should reverse a trial court "rarely and only after a clear abuse of discretion." *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1990). As we have already determined, this evidence was relevant in identifying appellant and showing his intent to commit capital murder. Moreover, the trial court gave a limiting instruction on the use of this evidence. The evidence presented to the jury concerning the aggravated robbery was not so prejudicial as to overcome the effectiveness of the limiting instruction. *See Powell v. State*, 63 S.W.3d 435, 439 (Tex. Crim. App. 2001) ("Here, the trial court's limiting instruction clearly shows that the trial court admitted the evidence for its noncharacter conformity purpose."); TEX. R. EVID. 105(a) (providing for limiting instruction when evidence is admissible for one purpose but not admissible for another). For these reasons, we conclude the trial court did not abuse its discretion in allowing the extraneous offense evidence.

## LAW OF PARTIES

In his second issue on appeal, appellant argues the trial court erred when it included an expansion on the law of parties definition in the jury charge. Specifically, appellant contends the charge allowed the jury to convict him of capital murder based on a theory of conspiracy to commit murder. Appellant complains this is error because conspiracy to commit capital murder is not a lesser included offense of capital murder. Appellant also asserts that the inclusion of the theory of conspiracy in the court's charge was error because the offense of conspiracy was not alleged in the indictment. Appellant did not object at trial; therefore, the alleged error must be fundamental in order to merit reversal. *English v. State*, 592 S.W.2d 949, 952 (Tex. Crim. App. 1980).

A criminal conspiracy is a separate offense under Texas Penal Code section 15.02. TEX. PENAL CODE ANN. § 15.02 (West 2011). However, here, the court's charge did not instruct the jury to consider whether appellant was guilty of criminal conspiracy. Instead, the court's charge contained an alternative "parties" charge that tracked Penal Code section 7.02(b), which provides:

> (b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id.* § 7.02(b).

The law of parties, as stated in section 7.02(b), may be applied to a case even though no such allegation was contained in the indictment. *Montoya v. State*, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989). Additionally, the theory of criminal responsibility as set forth in section 7.02(b) is applicable in capital murder cases. *Id.*; *Wallace v. State*, 618 S.W.2d 67, 69 (Tex. Crim. App. 1981). Section 7.02(b) "spells out how an actor can be held criminally responsible

for an offense committed by another, when the actor does not have the specific intent to commit the offense committed by the other." *English*, 592 S.W.2d at 954.

Here, in accordance with section 7.02(b), the court's charge required the jury to find that appellant, Munoz, and Velasquez conspired to commit felony robbery and "in an attempt to carry out this agreement . . . did intentionally cause the death of . . . Barrera." Thus, contrary to appellant's argument, the court's charge did not authorize the jury to convict appellant of the separate offense of conspiracy to commit murder. *See id*. Instead, the jury was required to find that appellant was a party to the offense of capital murder.

Based on a review of the record, we conclude the evidence in this case supported the submission of a charge on criminal responsibility pursuant to section 7.02(b). Additionally, it was not necessary for the State to include a conspiracy allegation in the indictment because it is not required under the law of parties. Thus, the trial court did not err in charging the jury based on section 7.02(b).

## CONCLUSION

We overrule both of appellant's issues on appeal and affirm the judgment of the trial court.

Sandee Bryan Marion, Justice

Do not publish